Opinion issued March 30, 2004




            











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00956-CV
____________
 
ABT GALVESTON LIMITED PARTNERSHIP AND
THE CIT GROUP/EQUIPMENT FINANCING, INC.,
Appellants

V.

GALVESTON CENTRAL APPRAISAL DISTRICT,
CITY OF GALVESTON, GALVESTON COUNTY,
GALVESTON COMMUNITY COLLEGE DISTRICT,
GALVESTON INDEPENDENT SCHOOL DISTRICT, AND
GALVESTON COUNTY NAVIGATION DISTRICT NO. 1, Appellees
 

 
 
On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 98CV0898
 

 

O P I N I O N

          Appellants, ABT Galveston Limited Partnership (ABT) and The CIT
Group/Equipment Financing, Inc. (CIT), challenge the trial court’s rendition of
summary judgment against them on their claims regarding the cancellation of ad
valorem property tax exemptions, the “unlawful assessment and collection of property
taxes,” and interest due on overpaid ad valorem property taxes brought against
appellee, the Galveston Central Appraisal District (GCAD), and appellees, the City
of Galveston (the City), Galveston County (the County), the Galveston Community
College District (GCCD), the Galveston Independent School District (GISD), and
Galveston County Navigation District No. 1 (the Navigation District) (collectively,
the taxing authorities).
          In two issues, ABT and CIT contend that the trial court erred in granting (1)
GCAD’s motion for summary judgment and (2) the taxing authorities, motion for
summary judgment. We affirm.
Facts and Procedural Background
          In 1994, ABT, a lessee of certain tracts of property located at the Port of
Galveston and owned by the City of Galveston Wharves Board, and the taxing
authorities executed separate ad valorem property tax abatement agreements


 in
anticipation of ABT’s construction of an automated grain bagging and loading facility
at the Port. The agreements provided that, in exchange for completing the proposed
construction and capital improvements, estimated at $23 million,


 ABT would
receive, for a period of seven years after completing construction, tax exemptions on
the full amount of the increases in value to the certified appraised value of the
property resulting from the improvements.
          Each of the abatement agreements provided that the pertinent taxing authority
could declare its agreement in default if ABT did not comply with its obligations,
including its obligations to (1) make the agreed upon improvements and (2) pay
timely any ad valorem taxes owed on the property.


 Each agreement required the
taxing authorities to give ABT written notice of, and 60 days to cure, any alleged
default before cancelling the exemption. ABT’s agreements with the City, GISD,
GCCD, and the Navigation District also included a “recapture” clause, which read as
follows:
In the event that the facility is completed and begins producing products
or services, but thereafter discontinues producing products or services
for any reason excepting fire, explosion or other casualty or accident or
natural disaster for a period of one (1) year during the abatement, then
this Agreement shall terminate and so shall the abatement of the taxes
for the calendar year during which the facility no longer produces. The
taxes otherwise abated for that calendar year shall be paid to the affected
jurisdiction within sixty (60) days from the date of termination.



          ABT obtained financing for the project from CIT and, in early 1996, completed
the construction of the facility and began operations. In April 1996, ABT filed its
application for a property tax exemption, pursuant to the terms of the abatement
agreements. GCAD retained Capitol Appraisal Group, Inc. to appraise the value of
the facility. On June 16, 1996, Michael Durham, who was ABT’s financial planner
and had previously been employed as a Deputy Chief Appraiser for GCAD, received
a fax from Capitol Appraisal Group (CAG), informing him that CAG had determined
that the market value of the facility was $21,670,900. GCAD’s certified appraisal roll
reflected this value as of July 1996.



          ABT’s business was financially unsuccessful and, by the end of June 1996,
ABT had stopped repayment of its loan obligations to CIT and had ceased operations
at the facility. In September 1996, CIT decided to foreclose on the assets at the
facility and to locate an outside party to purchase them. CIT subsequently began
negotiations to sell the facility’s movable assets to the Port of Lake Charles,
Louisiana. By letter dated October 17, 1996, Timothy Bennett, a CIT vice president,
solicited an offer from the Port of Lake Charles to purchase the facility’s movable
assets for $15.5 million. According to Bennett’s deposition testimony, the Port of
Lake Charles agreed to purchase the facility’s assets for $14,375,000 within “a matter
of weeks.”
          At a meeting held at the end of October 1996, representatives of the taxing
authorities informed representatives of ABT and CIT that, if any assets of the facility
were sold with the intent to move them out of Galveston County, a tax lien would be
applied to those assets and the assets would not be permitted to leave the property
without satisfaction of the lien.


 Following this meeting, GISD, the Navigation
District, and the City all notified ABT—by letters dated October 25, November 1, and
November 22, 1996, respectively—that ABT was in default of the abatement
agreements.
          At all relevant times, Mary Ellen Reinarz, with Galveston Tax Collections,
served as the tax assessor for GISD, the City, the Navigation District, and GCCD. On
December 6, 1996, Reinarz sent CIT a consolidated tax bill indicating that the 1996
appraised value of the facility was $21,671,900 and demanding $491,780.93 as the
amount of the 1996 property taxes due to GISD, the City, the Navigation District, and
GCCD by January 31, 1997. Also in December 1996, the governing bodies of those
four taxing authorities voted to cancel the tax abatement agreements with ABT.



          On December 20, 1996, the County also notified ABT that it was in default of
its tax abatement agreement with the County.


 One week later, the County, also
indicating that the 1996 appraised value of the facility was $21,671,900, demanded
payment of $112,693.88 as the amount of the 1996 property tax due to the County by
February 1, 1997. In January 1997, after Bennett had met with Reinarz to discuss the
amount of the appraised value of the facility, CIT, on behalf of ABT, paid the full
amount of the assessed 1996 taxes: $604,474.81.



          In March 1997, by private foreclosure sale, CIT foreclosed on and took
ownership of the assets at the facility and sold them to the Port of Lake Charles for
$14,355,000.


 That same month, in response to a letter from Reinarz informing CIT
that the facility and its moveable assets were subject to a tax lien to secure payment
of 1997 property taxes, CIT prepaid the estimated total of the 1997 property taxes due
to GISD, the City, the Navigation District, and GCCD: $516,370.


 Also in March
1997, CIT separately paid the estimated total of the 1997 property taxes due to the
County: $111,563.40. By separate letters accompanying its payments to the taxing
authorities, CIT specifically noted that it was paying the estimated 1997 property
taxes “under protest, and . . . reserv[ing] all rights of appeal.”
          The taxing authorities subsequently calculated the estimated 1997 property
taxes, and GCAD sent ABT a “Notice of Appraised Value” showing a decrease in the
facility’s appraised value from $21,671,900 in 1996 to $21,454,500 in 1997. In April
1997, CIT filed a formal protest of the taxing authorities’ estimated 1997 property
taxes, and GCAD, on its appraisal roll, subsequently reduced the appraised value of
the facility to $14,375,000, presumably reflecting the price that the Port of Lake
Charles had agreed to pay CIT for the facility’s assets. In September 1997, all of the
taxing authorities adopted their respective 1997 tax rates, and, on October 21, 1997,
the taxing authorities, with the exception of the County, issued a refund to CIT for the
amount of its overpayment of the 1997 property taxes. In December 1997, the
Galveston County Commissioners Court approved and issued a refund to ABT for
overpayment of the 1997 property taxes.



          In May 1998, ABT and CIT sent GCAD a letter protesting GCAD’s “failure
to give notice under Texas Tax Code § 41.411”


 and requesting a hearing before
the Galveston County Appraisal Review Board “to determine the 1996 appraised
value” of the facility. GCAD denied the request for a hearing.
          In October 1998, ABT and CIT filed suit against GCAD and the taxing
authorities and, in their fifth amended petition, asserted claims for (1) breach and
wrongful termination of the tax abatement agreements; (2) unlawful collection of the
1996 property taxes, which ABT and CIT alleged were paid “under duress”;
(3) failure to appraise the value of the facility fairly and to provide proper notice of
the appraised value of the facility; (4) violations of ABT’s and CIT’s constitutional
rights to “due course of law”


 and “due process,”


 both of which violations were
allegedly enforceable under federal law


; and (5) statutory interest due on the
refunded portion of the 1997 property taxes.


 As damages, ABT and CIT sought (1)
a full refund of the 1996 tax payment or, in the alternative, a refund of the non-prorated portion of the 1996 property taxes and (2) interest on the refunded portion
of the 1997 property taxes. ABT and CIT also sought equitable and declaratory
relief, requesting that the trial court order GCAD to correct the 1996 tax appraisal roll
to reflect the existence of a property tax abatement on the facility for 1996.
          GCAD and the taxing authorities answered the lawsuit, generally denied ABT’s
and CIT’s claims, and asserted various affirmative defenses, including governmental
immunity from suit and ABT’s and CIT’s alleged failure to exhaust administrative
remedies before filing suit. GCAD, in its motion for summary judgment on all of
ABT’s and CIT’s claims, asserted that it was entitled to judgment as a matter of law
because (1) ABT and CIT had failed to exhaust the administrative remedies available
to them under the Texas Property Tax Code (“the Code”)


 before filing suit on the
collection of the 1996 property taxes, thus depriving the trial court of jurisdiction to
consider their claims; (2) there was no evidence that ABT and CIT had paid the 1996
property taxes under duress; (3) GCAD was not a party to the property tax abatement
agreements and could not be held liable for any alleged breach or wrongful
termination of the agreements; and (4) GCAD did not violate the constitutional due
course of law and due process rights of ABT and CIT.
          The taxing authorities, in their motion for summary judgment, asserted that
they were entitled to judgment as a matter of law because (1) the property tax
abatement agreements were void or, alternatively, were properly cancelled following
ABT’s breach of the agreements; (2) ABT and CIT had failed to exhaust the
administrative remedies available to them under the Code before filing suit on the
collection of the 1996 property taxes, thus depriving the trial court of jurisdiction to
consider their claims; (3) there was no evidence that ABT and CIT had paid the 1996
taxes under duress; (4) ABT and CIT could not show either the existence or the
violation of a constitutional due course of law or due process right; and (5) ABT and
CIT were not entitled to interest on the refunded portion of the 1997 property taxes.
          On December 8, 2000, the trial court signed an interlocutory summary
judgment in favor of GCAD on all claims asserted against it by ABT and CIT. On
September 20, 2001, the trial court signed a final summary judgment in favor of the
remaining taxing authorities on all of ABT’s and CIT’s claims. In its summary
judgments, the trial court did not state the specific grounds for its rulings.
Standard of Review
          Summary judgment is proper only if the evidence shows that there are no issues
of material fact and that the moving party is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c).


 We may affirm a summary judgment only when the record
shows that a movant has disproved at least one element of each of the plaintiff’s
claims or established all the elements of an affirmative defense as to each claim. Id.;
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). The movant
has the burden of showing that there is no genuine issue of material fact and that it
is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985). In deciding whether there is a disputed material fact
issue precluding summary judgment, proof favorable to the non-movant is taken as
true, and the court must indulge every reasonable inference and resolve any doubts
in favor of the non-movant. Id. at 548-49. Because the trial court did not state the
specific grounds for its rulings granting summary judgments in favor of GCAD and
the taxing authorities, we will affirm the judgment of the trial court if any of the
theories advanced by GCAD and the taxing authorities in their respective motions for
summary judgment is meritorious. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001).
          As noted above, in their first and second issues, ABT and CIT contend that the
trial court erred in rendering summary judgment in favor of GCAD and the taxing
authorities. We consider these contentions in regard to ABT’s and CIT’s claims
concerning the assessment and collection of the 1996 property taxes and the refunded
portion of the 1997 property taxes, respectively.
1996 Property Tax Claims
          In regard to ABT’s and CIT’s claims concerning the assessment and collection
of the 1996 property taxes, GCAD and the taxing authorities asserted, as a threshold
argument in their motions for summary judgment, that the trial court lacked
jurisdiction to consider these claims because ABT and CIT did not timely avail
themselves of and exhaust the administrative remedies set forth in the Code prior to
filing suit.
          Section 42.09 of the Code provides that the “procedures prescribed by [the
Code] for adjudication of the grounds of protest” authorized by the Code “are
exclusive” and may not be raised as a basis for relief in a suit by a property owner. 
Tex. Tax Code Ann. § 42.09(a) (Vernon 2001). Because the administrative
procedures established by the Code are exclusive of a taxpayer’s other remedies, a
taxpayer must first exhaust all administrative remedies before seeking judicial review
of a taxing authority’s actions. Gen. Elec. Credit Corp. v. Midland Cent. Appraisal
Dist., 826 S.W.2d 124, 125 (Tex. 1992) (per curiam); Webb County Appraisal Dist.
v. New Laredo Hotel, 792 S.W.2d 952, 954 (Tex. 1990); Denton Cent. Appraisal Dist.
v. CIT Leasing Corp., 115 S.W.3d 261, 264 (Tex. App.—Fort Worth 2003, pet.
denied); Harris County Appraisal Dist. v. Dincans, 882 S.W.2d 75, 77 (Tex.
App.—Houston [14th Dist.] 1994, writ denied). A taxpayer’s failure to pursue and
to exhaust administrative remedies deprives a trial court of jurisdiction over the
cause. New Laredo Hotel, 792 S.W.2d at 954; Dincans, 882 S.W.2d at 77.
          In their petition, ABT and CIT alleged that GCAD and the taxing authorities
had failed to deliver proper or timely notice of several taxing authority actions
concerning the facility before attempting to collect property taxes for 1996. ABT and
CIT contend that the failure of GCAD and the taxing authorities to provide proper or
timely notice of these actions relieved ABT and CIT of their responsibility to exhaust
the administrative remedies available to them under the Code before filing their
lawsuit.
          Specifically, ABT and CIT assert that GCAD and the taxing authorities failed
to deliver proper notice of ABT’s and CIT’s alleged default of the tax abatement
agreements and of the taxing authorities’ decisions to cancel the property tax
exemptions. ABT and CIT contend that the taxing authorities did not provide ABT
and CIT with sufficient notice or time to cure any alleged defaults, under the terms
of the property tax abatement agreements, before terminating the agreements and
seeking to collect the 1996 property taxes assessed on the facility.
          ABT and CIT also alleged that GCAD failed to provide ABT and CIT with
proper notice of the removal of the property tax exemption for 1996 and failed to
deliver a notice of the 1996 appraised value of the facility that included an
explanation of ABT’s and CIT’s rights to protest GCAD’s appraisal of the value of
the facility.
          With regard to the cancellation of a property tax exemption, the Code provides
as follows:
If the chief appraiser learns of any reason indicating that an exemption
previously allowed should be canceled, he shall investigate. If he
determines that the property should not be exempt, he shall cancel the
exemption and deliver written notice of the cancellation within five days
after the date he makes the cancellation.

Tex. Tax Code Ann. § 11.43(h) (Vernon Supp. 2004). The Code also requires the
chief appraiser of an appraisal district to deliver, by May 15th or “as soon thereafter
as practicable,” a clear and understandable written notice to a property owner of the
appraised value of the property owner’s property for the preceding year, including “a
detailed explanation of the time and procedure for protesting the value.” Id. §
25.19(a), (b)(7) (Vernon Supp. 2004). Here, the record indicates that, as early as June
1996, ABT and CIT had been informally advised of the exact amount of the appraised
value of the facility by the independent appraisal company hired by GCAD to
appraise the facility. GCAD presented additional summary judgment evidence, in the
form of affidavit testimony and exhibits, in support of its contention that its official
notice of the appraised value of the facility, including instructions for filing a protest
of the appraisal, was timely sent to ABT and CIT, as required under section 25.19 of
the Code. 
          ABT and CIT objected to the summary judgment evidence presented by GCAD
on the grounds that, (1) generally, the motion did not reference the summary
judgment exhibits by exhibit or page number and ABT and CIT did not have
sufficient notice of the evidence upon which GCAD relied in support of the motion
and that (2) specifically, some of the statements contained within the affidavits
constituted inadmissible hearsay on the issue of whether ABT and CIT received an
official notice of the appraised value of the facility. As part of their first issue, ABT
and CIT argue that the trial court erred in denying their general and specific
objections to GCAD’s summary judgment evidence.



          With regard to ABT’s and CIT’s objection to GCAD’s failure to reference its
summary judgment exhibits by exhibit or page number, the record indicates that,
before the hearing on GCAD’s motion for summary judgment, GCAD supplemented
its motion with specific references to its summary judgment evidence. At the hearing,
when the trial court questioned counsel for ABT and CIT as to whether this
supplementation had “cured any objection,” counsel for ABT and CIT responded in
the affirmative. Thus, we hold that any objection to GCAD’s initial failure to
reference its summary judgment evidence specifically was waived. See Tex. R. App.
P. 33.1.
          ABT and CIT deny that they timely received notice from GCAD and argue that
the summary judgment evidence shows the existence of a material fact issue
concerning whether such notice was delivered timely. Assuming, without deciding,
that the taxing authorities failed to provide or did not deliver timely the notices of
which ABT and CIT complain, we examine the record to determine whether ABT and
CIT pursued and exhausted the Code’s available administrative remedies.



          The Code provides a property owner with the right to protest an appraisal
district’s determination of the appraised value of the property, the denial of a tax
exemption, or “any other action” that “applies to and adversely affects the property
owner.” Tex. Tax Code Ann. § 41.41(a)(1), (4), (9) (Vernon 2001). To be entitled
to a hearing and determination of its protest, a property owner must file a written
notice of protest with the appropriate appraisal review board within 30 days of
receiving the notice required under section 25.19. Id. § 41.44(a)(1) (Vernon 2001). 
A property owner who files its notice of protest after this deadline, but before the
appraisal review board approves the appraisal records, may still obtain a hearing and
a determination of the protest upon a showing of good cause for its failure to file a
timely protest. Id. § 41.44(b) (Vernon 2001).
          A property owner is also entitled to protest an appraisal district’s failure “to
provide or deliver any notice to which the property owner is entitled.” Id. § 41.411(a)
(Vernon 2001). If the failure to deliver such notice is established, the appraisal
review board must then determine the property owner’s protest on its merits. Id. §
41.411(b) (Vernon 2001). The Code provides that a property owner who files a
notice of protest regarding the appraisal district’s failure to provide or to deliver “any
notice to which the property owner is entitled” has a right to a hearing and a
determination of its protest if it (1) pays the amount of the taxes due on the portion
of the taxable value of the property that is not in dispute before the delinquency date
and (2) files its notice of protest before “the date the taxes on the property to which
the notice applies becomes delinquent.” Id. §§ 41.411, 41.44(c), 42.08(b) (Vernon
2001); see CIT Leasing Corp., 115 S.W.3d at 264.



          Here, it is undisputed that CIT paid the full amount of the 1996 property taxes
assessed on the facility before the delinquency date, which was February 1, 1997. 
However, ABT and CIT did not file a written protest of the 1996 property taxes or
request a hearing regarding GCAD’s “failure to give notice under Texas Tax Code
§ 41.411” until May 1998. Accordingly, we hold that ABT and CIT did not timely
pursue or exhaust the administrative remedies available under the Code to protest the
actions of the taxing authorities concerning the assessment and collection of the 1996
property taxes. As noted above, a taxpayer’s failure to pursue and to exhaust
administrative remedies deprives a trial court of jurisdiction to hear the taxpayer’s
claims. New Laredo Hotel, 792 S.W.2d at 954; Dincans, 882 S.W.2d at 77.
          ABT and CIT concede that, generally, a taxpayer must exhaust the Code’s
administrative remedies before filing a lawsuit against a taxing authority. They
assert, however, that they were not required to exhaust the Code’s administrative
remedies to contest the actions of the taxing authorities in this case because the taxing
authorities’ alleged failure to deliver or timely to provide the notices to which ABT
and CIT were entitled under the Code, and chiefly the failure to deliver the notice of
the 1996 appraised value of the facility, deprived them of their constitutional rights
of due process and due course of law. ABT and CIT argue that the taxing authorities’
alleged failure to deliver or timely to provide such notices thus “absolve[d] [ABT and
CIT] from pursuing administrative remedies before suing.”
          Collection of a tax constitutes a deprivation of property; therefore, a taxing
authority must afford a property owner due process of law. McKesson Corp. v. Div.
of Alcoholic Beverages & Tobacco, Dep’t of Bus. Regulation of Florida, 496 U.S. 18,
36-37, 110 S. Ct. 2238, 2250-51 (1990); Appraisal Review Bd. of El Paso v. Fisher,
88 S.W.3d 807, 813 (Tex. App.—El Paso 2002, pet. denied); see U. S. Const. amend.
XIV; Tex. Const. art. I, § 19. However, “[d]ue process simply affords a right to be
heard before final assessment; it does not detail the review mechanism.” Dallas
County Appraisal Dist. v. Lal, 701 S.W.2d 44, 47 (Tex. App.—Dallas 1985, writ ref’d
n.r.e.). Texas courts have held that, in cases involving taxation, due process is
satisfied if the taxpayer is given an opportunity to be heard before an assessment
board at some stage of the proceedings. CIT Leasing Corp., 115 S.W.3d at 266; Lal,
701 S.W.2d at 47.
          As support for their contention that the taxing authorities’ failure to deliver or
timely to provide notices to which ABT and CIT were entitled excused their failure
to pursue and to exhaust their available administrative remedies, ABT and CIT rely
on Valero South Texas Processing Co. v. Starr County Appraisal District, 954
S.W.2d 863, 865-66 (Tex. App.—San Antonio 1997, writ denied), Inwood Dad’s
Club v. Aldine Independent School District, 882 S.W.2d 532, 538 (Tex.
App—Houston [1st Dist.] 1994, no writ), Fina Oil & Chemical Co. v. Port Neches
Independent School District, 861 S.W.2d 3, 6 (Tex. App.—Beaumont 1993, writ
denied), Harris County Appraisal Review Board v. General Electric Corp., 819
S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1991, writ denied), and Garza v.
Block Distributing Co., 696 S.W.2d 259, 261-62 (Tex. App.—San Antonio 1985, no
writ). We find each of these cases inapplicable to the specific circumstances
presented here.
          In Valero South Texas Processing Co. v. Starr County Appraisal District, a
property owner timely filed a protest of an appraisal district’s property valuation of
a gas processing plant and, after a hearing before the appraisal review board, the
appraisal district sent the property owner a notice and an order concerning its decision
on the protest. 954 S.W.2d at 864-65. The property owner then filed a protest
concerning the district’s failure to provide an order that properly identified the
property owner and the property in question. Id. at 865. The trial court granted the
taxing authorities’ plea to the jurisdiction on the grounds that the property owner’s
suit was not filed within the statutorily prescribed 45-day period for appeal of an
appraisal review board’s final decision to the trial court. Id. at 865; see Tex. Tax
Code Ann. § 42.21 (Vernon 2001). The court of appeals subsequently agreed with
the property owner that the notice delivered by the district was deficient, and the
court held that the notice did not comply with the “constitutional requirements of due
process” of apprising the property owner of the pendency of the action and affording
it an opportunity to present its objections. Valero, 954 S.W.2d at 866. The court
further held that, as a result, the trial court’s dismissal of the property owner’s suit
was improper. Id. However, we note that, in its opinion, the Valero court never
addressed the application of section 41.44(c)’s requirement that a property owner file
its protest about the absence of notice before “the date the taxes on the property to
which the notice applies become delinquent” because, in that case, the property owner
had timely filed its initial protest before the tax delinquency date.
          This Court, in Inwood Dad’s Club, Inc. v. Aldine Independent School District,
reversed, in part, a trial court’s judgment in favor of a taxing authority against a
property owner which had previously been granted a property tax exemption based
on its status as a charitable organization and which exemption was removed by an
appraisal district without notice. 882 S.W.2d at 533-34. In the opinion, this Court
held that the appraisal district lacked the authority to remove a tax exemption without
notice to the property owner and that the removal of the exemption, without notice,
was a void act. Id. at 538. In the present case, however, it is undisputed that ABT
and CIT received written notice of the cancellations of the property tax exemptions
directly from the taxing authorities as early as December 1996—cancellations that
were confirmed later by additional notices from GCAD in 1997. ABT and CIT did
not make any written protest of such notices as inadequate or untimely until May
1998.
          In Fina Oil & Chemical Co. v. Port Neches Independent School District, a
property owner sued a taxing authority based on the cancellation of a property tax
abatement agreement. 861 S.W.2d at 4-5. The trial court dismissed the property
owner’s claims for want of jurisdiction, based on the property owner’s failure to file
a written protest of the cancellation of the exemption and to exhaust its administrative
remedies before filing suit. Id. at 5. The court of appeals reversed the trial court’s
dismissal and held that, because the appraisal district had failed to provide sufficient
notice to the property owner of the cancellation of the exemption, the property owner
was not required to exhaust its administrative remedies before filing suit. Id. at 5-6. 
In setting out its holding, the Fina court stated as follows:
[W]here a partial exemption is canceled by the chief appraiser as here
and the chief appraiser fails to give notice of his action canceling the
same within five days after the date he makes the cancellation, the
property owner is not barred from prosecuting a suit against the taxing
unit that contracted for the exemption by way of a tax abatement
agreement.

Id. at 6-7. We note that, in reaching its holding, the Fina court did not address
section 41.44(c), or any other authority, concerning the timeliness of a property
owner’s protest in the absence of a statutorily required notice, and we decline to
follow its reasoning.



          In Harris County Appraisal Review Board v. General Electric Corp., an
appraisal review board appealed from a trial court’s rendition of summary judgment
in favor of a property owner on its claim that, after the property owner had timely
paid its property taxes and filed a protest of the appraised value of the subject
property, the board failed to give the property owner a hearing on its protest. 819
S.W.2d at 917-18. The court of appeals affirmed the summary judgment in favor of
the property owner and held, in part, as follows:
To the extent that 41.411 (and 41.44(c)) requires the property owner
who has filed a protest of the appraisal to file an additional protest of
notice before the delinquency date, we hold that it constitutes an undue
procedural limitation on a taxpayer’s ability to assert its rights.

Id. at 919. However, because the property owner had timely filed its initial protest
of the board’s appraisal of the property, the court in Harris County Appraisal Review
Board addressed circumstances markedly different from those in the present case.
          Finally, in Garza v. Block Distributing Co., the court of appeals held that, in
the absence of any notice to a property owner, an appraisal board did not acquire
jurisdiction to consider an increase in the appraised value of the subject property. 696
S.W.2d at 262. However, we note that the relevant events of that case occurred
before the enactment of section 41.411 and its codification of a property owner’s right
to protest formally the failure of a taxing authority to deliver any notice “to which the
property owner is entitled.” Tex. Tax Code Ann. § 41.411(a).
          As noted above, the requirements of due process and due course of law are
satisfied if a taxpayer is given an opportunity to be heard before an assessment board
at some stage of the proceedings. CIT Leasing Corp., 115 S.W.3d at 266; Lal, 701
S.W.2d at 47. The Code provides for procedural due process for property owners to
file and to pursue a protest of a taxing authority’s actions, in circumstances such as
those presented in this case, in sections 41.41 and 41.411, subject to section 41.44’s
requirements that such protest be in writing and be filed timely. See CIT Leasing
Corp., 115 S.W.3d at 266. We acknowledge that, in the case of a lack of adequate or
timely notice, a taxing authority’s allegedly objectionable actions may be difficult to
discover, “especially when the burden of complaining of notice falls on the party who
is entitled to receive notice, rather than on the party who has the statutory duty to
send notice.” Gen. Elec. Corp., 819 S.W.2d at 919. However, in the present case,
having received notice directly from the taxing authorities of the cancellation of the
tax exemptions and of the “unofficial” appraised value of the facility well before the
tax delinquency date of February 1, 1997,


 ABT and CIT were aware of the fact that
they had not received, as they alleged, notices to which they were entitled. See Tex.
Tax Code Ann. § 41.411(a). We agree with the following observation by the court
in Dincans:
In view of the plethora of cases placing the burden on the property
owner to pursue his administrative remedy in a timely manner, we
cannot accept [a taxpayer’s] argument that would permit a property
owner to do nothing when confronted with an obviously erroneous tax
bill. To interpret [the applicable sections of the Code] in such a manner
would defeat the entire scheme the tax code sets out for protesting and
appealing actions of the appraisal board.

Id., 882 S.W.2d at 78.
          Based on the circumstances presented, we hold that ABT’s and CIT’s failure
to pursue and to exhaust the administrative remedies available to them under the
Code to protest the taxing authorities’ assessment and collection of the 1996 property
taxes on the facility was not excused by any alleged failure of the taxing authorities
to provide or timely to deliver the notices of which ABT and CIT complain. Because
this ground advanced by GCAD and the taxing authorities in their respective motions
for summary judgment is meritorious, and because the trial court did not state the
specific grounds for its ruling granting summary judgment on this issue, we need not
address ABT’s and CIT’s arguments concerning GCAD’s and the taxing authorities’
other grounds for summary judgment.
          Accordingly, we hold that the trial court did not err in rendering summary
judgment in favor of GCAD and the taxing authorities on ABT’s and CIT’s claims
concerning the assessment and collection of the 1996 ad valorem property taxes.
1997 Property Tax Claims
          ABT and CIT further contend, in their first and second issues, that the trial
court erred in rendering summary judgment on their claim against the taxing
authorities for statutory interest on the refunded portion of the 1997 property taxes.


 
In their motion for summary judgment, the taxing authoritites asserted that ABT and
CIT were not entitled to statutory interest on the refunded portion of the 1997
property taxes because ABT and CIT received their refund within 60 days of the date
that liability for the refund arose. See Tex. Tax Code Ann. § 31.12 (Vernon 2001).
          A taxpayer may apply to the tax collector of a taxing unit for a refund of an
overpayment or erroneous payment of taxes and, if the auditor for the taxing unit
determines that the payment was excessive or erroneous, “the tax collector shall
refund the amount of the excessive or erroneous payment . . . .” Id. § 31.11(a)
(Vernon Supp. 2004). However, if the amount of the refund exceeds $500, the tax
collector may not make the refund unless the governing body of the taxing unit also
determines that the payment was excessive or erroneous and approves the refund. Id. 
If a refund of a tax is “paid on or before the 60th day after the date the liability for the
refund arises,” no interest is due on the amount refunded. Id. § 31.12(a). However,
if not paid by that date, the amount of the refund accrues interest at a rate of one
percent for each month or part of a month that the refund is unpaid. Id.
          As noted above, in March 1997, CIT paid the taxing authorities $627,933.40
as the estimated 1997 property taxes assessed on the facility. In response to ABT’s
and CIT’s protest of the 1997 appraised value of the facility, GCAD subsequently
changed its appraisal roll to reduce the appraised value of the facility to $14,375,000. 
In September 1997, all of the taxing authorities adopted their respective 1997 tax
rates and, on October 21, 1997, with the exception of the County, the taxing
authorities issued a refund to CIT for the amount of its overpayment of the 1997
property taxes on the facility. In December 1997, the Galveston County
Commissioners Court approved and issued its refund to CIT for the overpayment of
the 1997 property taxes on the facility.



          ABT and CIT argue that, because the appraised value of the facility was
reduced on GCAD’s appraisal roll in July 1997, liability for the refunds arose that
month. Because the taxing authorities did not issue refunds of the overpayment of
the 1997 property taxes within 60 days of that date, ABT and CIT assert that they are
entitled to interest on the amount of the refunds at a rate of one percent per month
until they were subsequently paid. In support of their argument, ABT and CIT rely
on section 31.12(b)(3) of the Code, which provides that liability for a refund arises
“on the date the change in the tax roll is certified to the assessor for the taxing unit.” 
Id. § 31.12(b)(3) (Vernon 2001).
          However, section 31.12(b)(4) of the Code provides that, if a property tax
refund is required by section 31.11, and if the amount of the refund exceeds $500,
liability for the refund arises on the date that the governing body of the taxing unit
approves the refund. Id. § 31.12(b)(4) (Vernon 2001). Accordingly, we hold that the
liability for the tax refunds owed on the 1997 property taxes arose in September and
December 1997, when the refunds were approved by the taxing authorities. Because
the taxing authorities subsequently issued refunds to ABT and CIT “on or before the
60th day after” the date that liability arose, no interest accrued. Therefore, we hold
that the trial court did not err in rendering summary judgment on ABT’s and CIT’s
claims for statutory interest on the refunded amount of the 1997 property taxes.
Conclusion
          We overrule ABT’s and CIT’s first and second issues, and we affirm the
judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Alcala, and Hedges.