**HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Board, Appellants,**

v.

**Florence H. DINCANS, Independent Executrix of the Estate of Harold Burton Dincans, Deceased, Appellee.**

No. C14–93–00963–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1994.

Rehearing Denied Aug. 25, 1994.

M. Scott Bresk, Robert P. McConnell, Houston, for appellants.

Marvin A. Wurzer, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This case concerns a dispute as to the appraised value of two tracts of land owned by Harold Burton Dincans before his death in 1986. This appeal comes to us from the trial court's judgment ordering that Dincans's agricultural use exemption be reinstated for the years 1983 through 1986. Trial was to the court on a set of facts to which all parties stipulated. Appellants bring one point of error on appeal in which they assert the trial court had no jurisdiction over this cause because Dincans failed to exhaust his administrative remedies. Because we find the stipulated facts insufficient to establish delivery of the required notice of appraised value in 1984, we find Dincans was not bound to exhaust his administrative remedies before obtaining judicial review. Accordingly, we affirm the judgment of the trial court.

In the tax years of 1982 and 1983, Harris County was the taxing entity responsible for appraisals and tax assessments. Revisions in the Tax Code, however, led to the creation of county appraisal districts. Thus, beginning in 1984, the Harris County Appraisal District (HCAD) assumed these responsibilities. The dispute underlying this appeal originated in two tracts of land owned by Dincans being granted an "ag-use exemption" in 1982, and not being allowed this exemption in the years 1983 through 1986. Although the parties stipulated that from 1980 through 1986 the property met all requirements qualifying it as eligible for the exemption, only the years 1984 through 1986 are before us in this ap-

peal. The agricultural use exemption, referred to by statute as an exemption for "qualified open space land," allows property to be appraised at a lower rate of valuation on property qualifying as such. TEX.TAX CODE ANN. § 23.01 et seq. (Vernon 1992). The difference in the property owner's tax burden can be great. In the instant case, for example, one of the two tracts of Dincans's land in 1982 had a full market value of $271,340. With the agricultural use exemption, however, the taxable value of the land was only $29,140. This same tract of land experienced a drastic increase in value in 1984, appraising at a full market value of $1,943,500. The tax burden on this property at full market value would thus be extremely high, illustrating the importance both parties attach to this case.

The arguments made by the parties demonstrate a seeming conflict in two provisions of the tax code concerning notice to the taxpayer. Appellants state their case strictly in terms of section 25.19 that governs appraisals in general. This section requires the chief appraiser to deliver a written notice to a property owner in certain circumstances. In the instant case, HCAD was listing this property on its appraisal rolls for the first time in 1984 and thus was required by statute to send written notice of the property's appraisal. TEX.TAX CODE ANN. § 25.19(a)(3) (Vernon 1992). Appellee, however, frames the issue in the case in terms of section 23.54, the section concerning appraisals for qualified open-space land. Id. § 23.54. This section states that failure to file an application for such appraisal on time renders the land ineligible for the exemption. However, it also provides that once land is eligible for the exemption, the land is eligible for appraisal with that status in subsequent years without refiling an application. Another application need be filed only if eligibility of the land ends or the ownership of the land changes. However, the section places a limitation on this continuous entitlement to the exemption by noting that if the chief appraiser has good cause to believe that eligibility has ended, he may require a new application. TEX.TAX CODE ANN. § 23.54(e) (Vernon 1992). The chief appraiser must then deliver written notice that a new application is required and

include an application form. The facts stipulate that HCAD did not mail such notice to Dincans, though the facts do state that "it was the custom and policy of HCAD to deliver by mail a written notice that a new application was required, accompanied by the application form, to the person who filed an application that was previously granted." Appellee asserts that this section provides a requirement for notice to the taxpayer exclusive of the notice provision in section 25.19, such that even if Dincans did receive a notice of appraisal reflecting no agricultural use exemption, that HCAD's failure to give the notice in section 23.54 accompanied by an application form would absolve him of his failure to protest. We do not agree.

Appellee provides no authority to sustain her contention that section 23.54 prevails over the notice provision in 25.19. The Code Construction Act states that when interpreting a statute, one must presume that the legislature intended an entire statute be effective. TEX.GOV'T CODE ANN. § 311.021(2) (Vernon 1988). Therefore, it follows that an entire act within which the single statute appears was intended to be effective as well. *Allegheny Mut. Cas. v. State,* 710 S.W.2d 139, 141 (Tex.App.—Houston [14th Dist.] 1986, no pet.). We must interpret the respective notice provisions of these two sections to give effect to each provision such that we avoid ambiguity and render a just and reasonable result.

Generally, a party must exhaust its administrative remedies before being entitled to judicial review. *Texas Educ. Agency v. Cypress–Fairbanks, I.S.D.,* 830 S.W.2d 88 (Tex.1992); *City of Sherman v. Public Utility Comm'n of Texas,* 643 S.W.2d 681, 683 (Tex.1983). Failure to comply with the administrative remedy set up by the legislature in a statutory scheme means the trial court cannot gain jurisdiction over the cause. *Webb County Appraisal Dist. v. New Laredo Hotel,* 792 S.W.2d 952, 955 (Tex.1990); *Lawler v. Tarrant Appraisal Dist.,* 855 S.W.2d 269, 271 (Tex.App.—Fort Worth 1993, no writ); *Peil v. Waller County Appraisal Dist.,* 737 S.W.2d 33, 36–37 (Tex.App.—Houston [14th Dist.] 1987, no writ). Chapter 41 of the

Tax Code provides the means of reviewing a decision of the taxing entity. It specifically sets out a property owner's right to protest and states a taxpayer's right and opportunity to protest a number of actions. TEX.TAX CODE ANN. § 41.41 (Vernon 1992). These actions include specifically a determination that an owner's land does not qualify for appraisal under subchapter "c" of chapter 23, the provision concerning the agricultural use exemption. *Id.* § 41.41(1). This provision also includes a general right of protest for any action "that applies to and adversely affects the property owner." *Id.* § 41.41(9).

■ We find that the remedy for the alleged erroneous appraisal of Dincans's two tracts of land at their full market value was to lodge a protest pursuant to the procedures outlined in section 41. Failure to receive the notice and application under section 23.54(e) can be addressed in a protest before the appraisal board. We find no conflict between the notice provision in 23.54 and that of 25.19 because of the primary significance of section 25.19 in being the first notice to a taxpayer that for whatever reason an agricultural use exemption had not been allowed. In view of the plethora of cases placing the burden on the property owner to pursue his administrative remedy in a timely manner, we cannot accept appellee's argument that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill. To interpret sections 23.54 and 25.19 in such a manner would defeat the entire scheme the tax code sets out for protesting and appealing actions of the appraisal board.

■ We thus find that this case turns on the question of whether Harold Dincans received the required notice of appraised value in 1984, the first year Harris County Appraisal District appraised his property and was thus required to send this notice. The stipulation as to this matter states the following: "According to the official records of HCAD, a notice of the appraised market value was mailed to Harold Burton Dincans at his correct address on September 13, 1984." No other stipulation concerns this issue of whether Dincans received this notice under section 25.19. Section 1.07 of the Tax Code allows a party the presumption of delivery of notice upon its deposit in the mail for delivery by first-class mail. TEX.TAX CODE ANN. § 1.07(c) (Vernon 1992). The presumption is rebuttable, however, and the presumption will disappear if the taxpayer presents evidence that he in fact never received the notice. *Id.; see also Dallas Cent. Appraisal Dist. v. Las Colinas Corp.,* 814 S.W.2d 816, 818 (Tex.App.—Dallas 1991), *rev'd on other grounds,* 835 S.W.2d 75 (Tex.1992). The facts of this case thus lead us to the controlling issue of whether the stipulation is sufficient to create the presumption of delivery where the stipulation does not exactly track the language of the statute. *See Green v. State,* 681 S.W.2d 84, 85 (Tex.App.—Houston [14th Dist.] 1984, writ dism'd) (finding stipulation sufficient although did not track language of statute because statutory requirement of being "under arrest" was met by stipulation stating party "had been arrested").

Few cases exist regarding the provisions of section 1.07 and the conditions necessary to establish the presumption. One of the most extensive discussions of this provision occurs in *Dallas County Appraisal Dist. v. Lal,* 701 S.W.2d 44 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). *Lal* was a summary judgment case, and to determine the question of delivery, the court had considerable evidence to look to in the form of an affidavit from the appraisal coordinator. The affidavit detailed eight steps taken by the appraisal district in mailing the notice of appraisal. The affidavit contained the following information:

(1) notice of the appraised value of all property in the county was printed by carbon within an envelope addressed to each taxpayer listed on the 1982 tax roll;

(2) the 1982 tax roll shows Lal's address as 1335 North Beltline Rd., Irving, Texas;

(3) the envelopes were preprinted "presorted First Class Mail, U.S. Postage Paid";

(4) the Appraisal District has money in escrow with the U.S. Post Office to pay for postage;

(5) the employees of Appraisal District collated and separated individual notices;

(6) such notices were then placed into a U.S. Post Office delivery box at the Appraisal District office;

(7) each postal delivery box was then taken to the main U.S. Post Office in Dallas for mailing; and

(8) the notice sent to Lal was not returned to the Appraisal District.

*Lal,* 701 S.W.2d at 48–49.

We do not agree with appellee's far-reaching suggestion that these eight elements are a universal means of establishing the presumption of delivery, nor do we agree that a party must show these eight elements any time it seeks the benefit of the presumption. *See Uvalde County Appraisal Dist. v. Kincaid,* 720 S.W.2d 678, 680 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (noting need for evidence "comparable" to that of *Lal* in order to establish presumption). We do interpret *Lal* as demonstrating the kind of evidence necessary to establish the presumption. Given the importance the Tax Code places on giving notice for purposes of due process, we find the stipulation in the instant case inadequate to establish the presumption of delivery under section 1.07.

As the summary judgment proof presented in *Lal* illustrates, it is important to have the appraisal district prove that sufficient postage was placed on the envelope containing the notice, to know the means by which it places such notices in the mail, and to know that first-class mail was in fact utilized, and to know it was sent to the most current address and not returned. These more detailed assertions justify the appraisal district's entitlement to the presumption, showing that all possible precautions were taken to ensure the notice would go to the taxpayer listed on the tax rolls at his or her correct address as reflected on the tax rolls. The stipulation in the instant case, which could have easily established the presumption through clarifying the means by which notice was sent, instead would require us to assume facts not in evidence. *See Sadler v. Duvall,* 815 S.W.2d 285, 289 (Tex.App.—Texarkana 1991, writ denied) (stating trial court is bound by stipulation); *Collum v. Deloughter,* 535 S.W.2d 390, 393 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.) (stating when parties stipulate that value of property is

certain amount, court cannot go behind stipulation and speculate that value is less than that stipulated); *Employers Casualty Co. v. Am. Employers Ins. Co.,* 397 S.W.2d 292, 297 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.) (where case submitted on stipulated facts, duty of court is simply to determine legal effect of those facts). If an appraisal district is to gain the benefit of this significant presumption, it must do its part in ensuring, and proving, that all such safeguards were taken.

Because HCAD could have easily stated it had taken these safeguards suggested in *Lal,* we must question the steps it took in sending out the notices of appraised value and cannot find their stipulation, stating merely that they sent notice, sufficient to establish the presumption of delivery. Thus, appellee had nothing to rebut. Without sufficient proof that HCAD delivered in 1984 the notice required by section 25.19, we must find that appellee was not bound to the general rule that all administrative remedies must be exhausted before resorting to the judicial system. *Uvalde County Appraisal Dist. v. Kincaid,* 720 S.W.2d 678, 680 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). Therefore, we cannot find on this basis that the trial court erred in entering judgment for appellee. Point of error one is overruled, and the judgment of the trial court is affirmed.