**Affirmed and Opinion filed August 3, 2017.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-16-00584-CV

**VITOL, INC., Appellant**

**V.**

**HARRIS COUNTY APPRAISAL DISTRICT, Appellee**

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2015-44729**

## O P I N I O N

Appellant Vitol, Inc., provided information about its business property for tax year 2014 to appellee Harris County Appraisal District ("HCAD"). Vitol also submitted to HCAD a form requesting an Interstate or Foreign Commerce ("IFC") tax exemption. Vitol received a 2014 Notice of Appraised Value for Property Tax Purposes ("2014 Notice") that did not contain any IFC exemption. Vitol did not file a written or online protest with the Appraisal Review Board ("ARB") by the deadline stated in the 2014 Notice. Vitol engaged in discussions about its exemption request

with HCAD. Months later, Vitol filed a written protest with the ARB, alleging that HCAD failed to provide proper notice of the denial of the IFC exemption and that HCAD improperly denied the exemption.

After the ARB denied Vitol's protest, Vitol appealed to the trial court. HCAD filed a plea to the jurisdiction based on Vitol's failure to timely protest and exhaust its administrative remedies. The trial court denied Vitol's motion for continuance of the hearing on the plea. After the hearing, the trial court granted HCAD's plea and dismissed Vitol's claims for lack of jurisdiction. Vitol appeals the trial court's denial of Vitol's motion for continuance and the trial court's granting of HCAD's plea to the jurisdiction. We affirm.

## I. BACKGROUND

Vitol owns and operates a petro-chemical storage facility, often referred to as a tank farm, in Harris County, Texas, subject to ad valorem property taxes. On April 15, 2014, Vitol submitted a confidential rendition to HCAD regarding Vitol's gasoline products stored in certain tank numbers with a property address of 906 Clinton Drive, "INV @ KINDER MORGAN GALENA PARK." Vitol reported that the original cost of these products was $15,224,054.

Vitol claimed that its gasoline products were pre-committed to be shipped out of state as of the September 1, 2013, appraisal date for tax year 2014. On April 15, 2014, Vitol submitted to HCAD a form 11.12(IC) report of goods in interstate or foreign commerce as of September 1, 2013. Form 11.12(IC) states that the property owner's "response will help [HCAD] determine if such inventories are qualified for exemption under Texas Tax Code Sec. 11.12."[1] The tank numbers and barrel

---

[1] *See* Tex. Tax Code Ann. § 11.12 (West 2015) ("Property exempt from ad valorem taxation by federal law is exempt from taxation.").

2

amounts provided on the form are identical to those on Vitol's rendition. The location is "Kinder Morgan Galena Park, TX." Other details Vitol provided include: the reason for the inventory's presence in Texas, whether it was in possession of a carrier, the name of the carrier, the inventory's final destination, the date it left Texas, and the percentage committed to the carrier.

On June 20, 2014, HCAD mailed the 2014 Notice to Vitol. The 2014 Notice described the property as "Tank Farms (Products Inside Tanks) INV AT KM LIQUIDS TERMINAL LP" with a property location of 906 Clinton Drive in Galena Park, Texas. The appraised value of the property was $15,224,054. The 2014 Notice listed the estimated amount of taxes to be paid using last year's specified rates for each of seven taxing jurisdictions, which totaled approximately $355,600. The 2014 Notice also contained a column labeled "Exemptions Granted," which listed a "0" for each of seven taxing jurisdictions. One of the exemption codes available to be granted was "IFC Interstate or Foreign Commerce."

The 2014 Notice stated: "**Your protest deadline is July 21, 2014.** If you wish to protest the value or other issues you must do so online or in writing on or before this date." The 2014 Notice stated that it included a protest form and information on how to prepare and present a protest. The 2014 Notice provided the HCAD website link to file a protest online. The 2014 Notice stated: "Hearings for the 2014 tax year will begin May 12, 2014, at 13013 Northwest Fwy." The 2014 Notice also stated:

- This account lists the value of your business personal property .
  . . .

- If you choose to protest and have access to the Internet, we encourage you to file your protest on line at www.hcad.org/ifile. The process is quick and you will receive a receipt via email.

3

- **You should also check the list of exemptions shown on the front. If you applied for and have been granted a disabled veterans exemption, freeport exemption, or tax abatement, the specific code for the exemption should appear in the appropriate columns. If they do not, contact us immediately. If you have not applied for exemptions and you qualify, contact our office for an exemption application.**

- The filing deadline for your protest appears on the front of this notice. If your value is wrong, we encourage you to file your protest as soon as possible.

- In the event a protest or correction is filed on this account, we intend to use as part of our evidence any and all information included in this notice.

- We encourage you to call our office if you have concerns or come by for an individual meeting with an appraiser.

After receiving the 2014 Notice, Tony Oliver, Vitol's Assistant Secretary, exchanged emails with two HCAD representatives, Paul Wright and Hartley Chevalier, regarding Vitol's IFC exemption request. Oliver provided certain requested information about Vitol's inventory. In the meantime, the tax roll was certified, including Vitol's account. In an email dated September 29, 2014, Chevalier stated that HCAD had denied Vitol's requested IFC exemption. Oliver then requested a formal denial, and Wright responded:

> Your account was notice [sic] on 6-20-2014 without a Freeport or IFC exemption. As stated on your notice "**Your protest deadline is July 21, 2014.** If you wish to protest the value or _**other issues**_ you must do so online or in writing on or before this Date". You notify [sic] Mr. Chevalier of an IFC exemption you are requesting; however, it is still your responsibility to file a timely protest on the IFC exemption if not granted prior to your protest deadline. Therefore your notice is your formal denial of the IFC exemption and you can use this email as a notification of the denial of your IFC exemption . . . .

On November 5, 2014, Vitol filed two written property tax notices of protest.

4

One claimed that the chief appraiser did not provide required notice of the denial of Vitol's IFC exemption request under section 11.45 of the Tax Code. The other one claimed that if Wright's email constituted an actual denial of the IFC exemption under section 11.45, then the denial was improper. The ARB concluded that HCAD provided Vitol with sufficient notice on June 20, 2014, and denied Vitol's protest. Vitol appealed the ARB's protest order to the trial court.

HCAD filed a plea to the jurisdiction based on Vitol's not exhausting its administrative remedies as required by chapter 41 of the Tax Code.[2] According to HCAD, Vitol was entitled to protest denial of the IFC exemption and all issues related to the 2014 Notice but Vitol did not timely protest. Vitol moved to continue the hearing on HCAD's plea, seeking "fuller" responses to requests for discovery and depositions of certain HCAD's representatives. The trial court denied Vitol's motion. Vitol filed a response to HCAD's plea, arguing that HCAD failed to deliver notice of its disallowance of the IFC exemption and that Vitol timely protested HCAD's failure under section 41.411 of the Tax Code.[3] The trial court granted the plea to the jurisdiction, dismissing all of Vitol's claims against HCAD. Vitol timely appealed.[4]

---

[2] To its plea, HCAD attached: Vitol's rendition regarding its "biodiesel-unrecoverable inventory" with a market value of $0, electronically submitted to HCAD on April 9, 2014; Vitol's rendition regarding its gasoline products; Vitol's form 11.12(IC) report of goods; and the 2014 Notice.

[3] To its response, Vitol attached: Oliver's affidavit; Vitol's form 11.12(IC); the 2014 Notice with handwritten notations; emails between HCAD and Vitol dated from June 30 to September 30, 2014; a printed-out HCAD detail sheet for Vitol's inventory for tax year 2015; Vitol's property tax notices of protest dated November 5, 2014; the ARB order denying Vitol's protest dated June 22, 2015; HCAD's notice of appraised value for Vitol's inventory for tax year 2015; and Vitol's original petition.

[4] In its petition, in addition to claims based on chapter 11 and due process, Vitol alleged that the appraised value of its property for tax year 2014 exceeded market value. In its plea, HCAD argued that Vitol never protested and failed to exhaust excessive valuation at the administrative level. The trial court dismissed all of Vitol's claims against HCAD. On appeal, Vitol does not

5

## II. ANALYSIS

Vitol brings two issues. First, Vitol contends the trial court erred by granting HCAD's plea to the jurisdiction because Vitol raised a fact issue that it exhausted its administrative remedies. Second, Vitol contends the trial court abused its discretion by denying Vitol's motion to continue the hearing on the plea so that Vitol could discover additional jurisdictional facts.

### A. Plea to the jurisdiction

The existence of subject-matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on a plea de novo. *See Miranda*, 133 S.W.3d at 226, 228; *Woodway Drive LLC v. Harris Cty. Appraisal Dist.*, 311 S.W.3d 649, 651 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227. The movant must meet the summary-judgment standard of proof by conclusively demonstrating that the trial court lacks subject-matter jurisdiction. *See id.* at 227–28. We credit as true all evidence favoring the nonmovant and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court may not grant the plea, and the fact issue will be resolved at trial by the factfinder. *Id.* at 227–28. If relevant evidence is undisputed or fails to raise a fact question on

---

challenge dismissal of its excessive-valuation claim. *See Duerr v. Brown*, 262 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

the jurisdictional issue, then the trial court rules on the plea as a matter of law. *Id.* at 228.

## B. Protest and exhaustion of administrative remedies under the Tax Code

The chief appraiser prepares a record of all taxable property in the district and states the appraised value for each. Tex. Tax Code Ann. § 25.01(a) (West 2015). The ARB examines the appraisal district's appraisal records to determine whether appraisals are substantially uniform, exemptions are properly granted, and the appraisal records conform to their legal requirements. *See id.* §§ 6.01 (West 2015), 41.01(a) (West 2015). The appraisal records with amounts of tax entered as approved by the ARB become the appraisal roll. *See id.* § 25.24 (West 2015). "The legislature's intent, as may be determined from the overall tax appraisal protest scheme, is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests." *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.—Dallas 2000, pet. denied).

"The Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006); *see generally* Tex. Tax Code Ann. chs. 41–42 (West 2015). The Tax Code presents a pervasive regulatory scheme intended to vest ARBs with exclusive jurisdiction. *Appraisal Review Bd. of Harris Cty. Appraisal Dist. v. O'Connor & Assocs.*, 267 S.W.3d 413, 416–17 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Property owners generally must exhaust their administrative remedies before seeking judicial review. *Harris Cty. Appraisal Dist. v. ETC Mktg., Ltd.*, 399 S.W.3d 364, 367 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *O'Connor & Assocs.*, 267 S.W.3d at 417. This is because "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Rourk*, 194 S.W.3d at 502

(internal quotation marks omitted).

Pursuant to chapter 41, property owners are entitled to administratively protest certain actions to the ARB. *See* Tex. Tax Code Ann. § 41.41(a).[5] Section 41.41 outlines eight actions that may be protested by a property owner to the ARB, including "denial to the property owner in whole or in part of a partial exemption." *Id.* § 41.41(a)(4). In addition, subsection (a)(9) authorizes a general protest of "any other action of the chief appraiser [or] appraisal district . . . that applies to and adversely affects the property owner." *Id.* § 41.41(a)(9). "[T]o take advantage of this option, generally, a property owner must file a written notice of protest within thirty days after the owner receives a notice of the appraised value of the property." *Bauer-Pileco, Inc. v. Harris Cty. Appraisal Dist.*, 443 S.W.3d 304, 310 (Tex. App.—

---

[5] Section 41.41 of the Tax Code, entitled "Right of Protest," provides:

(a) A property owner is entitled to protest before the appraisal review board the following actions:

> (1) determination of the appraised value of the owner's property or, in the case of land appraised as provided by Subchapter C, D, E, or H, Chapter 23,[] determination of its appraised or market value;
>
> (2) unequal appraisal of the owner's property;
>
> (3) inclusion of the owner's property on the appraisal records;
>
> (4) denial to the property owner in whole or in part of a partial exemption;
>
> (5) determination that the owner's land does not qualify for appraisal as provided by Subchapter C, D, E, or H, Chapter 23;
>
> (6) identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll;
>
> (7) determination that the property owner is the owner of property;
>
> (8) a determination that a change in use of land appraised under Subchapter C, D, E, or H, Chapter 23, has occurred; or
>
> (9) any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner.

Tex. Tax Code Ann. § 41.41(a).

8

Houston [1st Dist.] 2014, pet. denied); *see Anderton*, 26 S.W.3d at 543 ("For substantive challenges to property appraisals, the legislature has determined that thirty days after receiving a notice of appraised value is normally sufficient time within which to file a protest."); *see* Tex. Tax Code Ann. § 41.44(a). The ARB must schedule and hold a hearing on the property owner's protest. Tex. Tax Code Ann. § 41.45; *see id.* §§ 41.66–.67.

In addition, "[a] property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled." *Id.* § 41.411(a). If the property owner has complied with filing and payment requirements, then the ARB determines at a hearing whether the property owner was provided the required notice and, if not, determines the property owner's protest on its merits. *See id.* §§ 41.411(b)–(c), 41.44(c). "The sole purpose of 41.411 is to determine whether a property owner failed to receive notice thereby depriving him or her of the right to be heard at the administrative level." *Harris Cty. Appraisal Review Bd. v. Gen. Elec. Corp.*, 819 S.W.2d 915, 919 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *see Denton Cent. Appraisal Dist. v. CIT Leasing Corp.*, 115 S.W.3d 261, 266 (Tex. App.—Fort Worth 2003, pet. denied).

A protest on the ground that property qualifies for exemption from taxation under section 11.12 is properly raised through chapter-41 proceedings before the ARB. *See ETC Mktg.*, 399 S.W.3d at 366–67 (interstate-commerce exemption) (citing Tex. Tax Code §§ 11.12, 41.41(a)(3), (9)); *Harris Cty. Appraisal Dist. v. Shell Oil Co.*, No. 14-07-00106-CV, 2008 WL 2130441, at *2–3 (Tex. App.—Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.) (foreign-trade zone exemption) (citing Tex. Tax Code §§ 11.12, 41.41). "[T]he failure to file a timely protest for an exemption based on interstate commerce is not a procedural error but

is a jurisdictional one because it implicates exhaustion of remedies." *ETC Mktg.*, 399 S.W.3d at 369, 371 (property owner failed to exhaust exemption issue where not included as ground in chapter-41 protest).

"This administrative review process is intended to 'resolve the majority of tax protests at this level, thereby relieving the burden on the court system.'" *Id.* at 367 (citing *Webb Cty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990)). "The administrative procedures are 'exclusive' and most defenses are barred if not raised therein." *Rourk*, 194 S.W.3d at 502 (citing Tex. Tax Code § 42.09(a)). A property owner may file a petition for review in district court against the appraisal district to appeal an order by the ARB determining the owner's protest. Tex. Tax Code Ann. §§ 42.01, 42.21. Review in the district court is by trial de novo. *Id.* § 42.23(a).

## C. The 2014 Notice

In its plea to the jurisdiction, HCAD argued that Vitol failed to exhaust its administrative remedies under chapter 41 regarding Vitol's section-11.12 IFC exemption. HCAD argued that it sent Vitol the 2014 Notice in accordance with section 25.19, which "demonstrated that no IFC Exemption had been granted for 2014." According to HCAD, because Vitol did not protest the 2014 Notice by July 21, 2014, Vitol failed to exhaust its administrative remedies and could not raise a late challenge to any issue raised by the 2014 Notice, including the IFC exemption.

Vitol responded that it properly exhausted its administrative remedies by timely filing a section-41.411 protest regarding the failure of notice under chapter 11. Vitol contends it was not required to protest the 2014 Notice because that

document did not provide adequate notice of the denial of Vitol's IFC exemption request as required under sections 11.43 and 11.45.[6]

## 1. Statutory review

The parties' arguments demonstrate a seeming conflict among provisions of the Tax Code concerning notice—specifically, section 25.19 and sections 11.43 and 11.45. When the issue presented requires a review of the trial court's interpretation and application of the Texas Tax Code, we evaluate the provisions at issue de novo to determine their meaning as a question of law. *See Nipper-Bertram Trust v. Aldine Indep. Sch. Dist.*, 76 S.W.3d 788, 791 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex. 1997)).

"When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (citing Tex. Gov't Code § 312.005). We discern that intent by considering the statute's words. *Id.* (citing Tex. Gov't Code § 312.003). If a statute is unambiguous, then we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *Id.* We consider statutes as a whole rather than their isolated provisions. *Id.* We presume that the Legislature chooses a statute's language carefully, including each word chosen and omitting words purposefully. *Id.* We also presume that the Legislature intends an entire statute, as well as "an entire act within which the single statute appears," to be effective. *See* Tex. Gov't Code Ann. § 311.021(2) (West 2013); *Harris Cty.*

---

[6] Vitol's section 41.411-protest provided the reason: "Failure to send required notice UNDER 11.45."

11

*Appraisal Dist. v. Dincans*, 882 S.W.2d 75, 77 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

### 2. Section 25.19

Section 25.19 of the Tax Code, entitled "Notice of Appraised Value," sets out the statutory requirements for appraisal districts to provide written notice of appraised value to property owners. *See* Tex. Tax Code Ann. § 25.19 (West 2015 & Supp. 2016); *Harris Cty. Appraisal Dist. v. Blue Flash Express, L.L.C.*, No. 01-06-00783-CV, 2007 WL 1412651, at *5 n.11 (Tex. App.—Houston [1st Dist.] May 10, 2007, pet. denied) (mem. op.). The version of section 25.19 applicable to tax year 2014 required written notice of appraised value "if: (1) the appraised value of the property is greater than it was in the preceding year; (2) the appraised value of the property is greater than the value rendered by the property owner; or (3) the property was not on the appraisal roll in the preceding year." Act of May 25, 2007, 80th Leg., R.S., ch. 1106, § 1, 2007 Tex. Gen. Laws 3738, 3738 (amended 2015) (current version at Tex. Tax Code § 25.19(a)). The applicable version of section 25.19 further provided:

> The chief appraiser shall separate real from personal property and include in the notice for each: . . . the appraised value of the property for the current year and the kind and amount of each partial exemption, if any, approved for the current year . . . .

Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 11, 2005 Tex. Gen. Laws 1103, 1106 (amended 2015) (current version at Tex. Tax Code § 25.19(b)(4)). Notice also should include: a list of the taxing units in which the property is taxable, the appraised value of the property in the preceding year, the taxable value of the property in the preceding year for each taxing unit, a detailed explanation of the time and procedure for protesting the value, and the date and place the ARB will begin hearing protests. Tex. Tax Code Ann. § 25.19(b). Such requisite notice is to be

provided "by May 1 or as soon as practicable." *Id.* § 25.19(a).

Under the plain language of section 25.19, where the appraisal district provides written notice with regard to personal property, such notice must include the appraised value of the property and any approved partial exemption for the current tax year. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 11, 2005 Tex. Gen. Laws 1103, 1106. In other words, if the notice does not list a kind of exemption and states that the amount of exemption applied to the appraised value is "0," then no exemption of any type has been approved for the current tax year.

### 3. Sections 11.43 and 11.45

Section 11.43 of the Tax Code, entitled "Application for Exemption," provides: "To receive an exemption, a person claiming the exemption, other than an exemption authorized by Section 11.11, 11.12, 11.14, 11.145, 11.146, 11.15, 11.16, 11.161, or 11.25 of this code, must apply for the exemption. To apply for an exemption, a person must file an exemption application form with the chief appraiser for each appraisal district in which the property subject to the claimed exemption has situs." Tex. Tax Code Ann. § 11.43(a) (West 2015 & Supp. 2016). With regard to notice, the version of section 11.43 applicable to tax year 2014 provides:

> If the chief appraiser learns of any reason indicating that an exemption previously allowed should be canceled, he shall investigate. If he determines that the property should not be exempt, he shall cancel the exemption and deliver written notice of the cancellation within five days after the date he makes the cancellation.

Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 41, 1981 Tex. Gen. Laws 117, 132 (amended 2015) (current version at Tex. Tax Code § 11.43(h)).

Under the plain language of section 11.43, property owners who wish to claim certain exemptions—excepting section-11.12 and other exemptions—must submit

an application. *See* Tex. Tax Code Ann. § 11.43(a). If the chief appraiser decides to cancel an exemption that had been previously allowed, then he must send written notice within five days. *See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 41, 1981 Tex. Gen. Laws 117, 132.

Section 11.45, entitled "Action on Exemption Applications," provides:

(a) The chief appraiser shall determine separately each applicant's right to an exemption. After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:

(1) approve the application and allow the exemption;

(2) modify the exemption applied for and allow the exemption as modified;

(3) disapprove the application and request additional information from the applicant in support of the claim; or

(4) deny the application.

(b) If the chief appraiser requests additional information from an applicant, the applicant must furnish it within 30 days after the date of the request or the application is denied. However, for good cause shown the chief appraiser may extend the deadline for furnishing the information by written order for a single period not to exceed 15 days.

(c) The chief appraiser shall determine the validity of each application for exemption filed with him before he submits the appraisal records for review and determination of protests as provided by Chapter 41 of this code.

(d) If the chief appraiser modifies or denies an exemption, he shall deliver a written notice of the modification or denial to the applicant within five days after the date he makes the determination. He shall include with the notice a brief explanation of the procedures for protesting his action.

Tex. Tax Code § 11.45 (West 2015).

Under the plain language of section 11.45, the chief appraiser must either approve, modify, disapprove and request additional supporting information, or deny

an exemption application. *See id.* § 11.45(a). The chief appraiser must determine the validity of each exemption application before submitting the appraisal records for review and determination of protests. *See id.* § 11.45(c). If the chief appraiser modifies or denies an exemption, then he must send written notice within five days. *See id.* § 11.45(d); *see also* Tex. Tax Code Ann. § 1.07(d) (West 2015) (section-11.45(d) notice must be sent by certified mail).

## D. Vitol failed to timely protest and did not exhaust its administrative remedies.

Vitol based its written protest to the ARB on the alleged failure of notice under section 11.45 without mentioning section 11.43.[7] However, even assuming that Vitol sufficiently raised a lack of notice under both sections, we conclude that Vitol's failure to timely pursue and exhaust the administrative remedies available to it under the Tax Code to protest the 2014 Notice is not excused by any alleged failure by HCAD to provide or timely deliver any requisite notice under chapter 11.

Although not mentioned by either party, our court has considered similar circumstances involving the interaction of notice under section 25.19 and notice under chapter 23. In *Harris County Appraisal District v. Dincans*, the property at issue previously had been granted an "agricultural use" exemption, which allows property to be appraised at a lower rate of valuation. 889 S.W.2d at 76–77 (citing Tex. Tax Code § 23.01 *et seq.*). Section 23.54, entitled "Application," prescribes the manner in which an application for an open-space exemption for qualified agricultural land may be made. *Id.* at 77 (citing Tex. Tax Code § 23.54). Once land

---

[7] *See supra* n.6. In any event, the evidence on the plea does not reveal that an IFC exemption was applied to Vitol's inventory for tax year 2013. Vitol cites solely to the HCAD detail sheet for tax year 2015, which provides no information about tax year 2013. The 2014 Notice states that last year's value (after exemptions) was $28,000,000, but even construed in the light most favorable to Vitol, this is not evidence that Vitol received an IFC exemption for tax year 2013.

15

is eligible for the exemption, the land is eligible for lower appraisal in subsequent tax years without refiling an application. *Id.* The applicable version of section 23.54 provided:

> [T]he chief appraiser if he has good cause to believe the land's eligibility under this subchapter has ended, may require a person allowed appraisal under this subchapter in a prior year to file a new application to confirm that the land is currently eligible under this subchapter by delivering a written notice that a new application is required, accompanied by the application form, to the person who filed the application that was previously allowed.

*See* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 69, 1981 Tex. Gen. Laws 117, 144 (amended 2015) (current version at Tex. Tax Code § 23.54(e)).

The property owner Dincans did not receive written notice of the need to reapply for his open-space exemption and application form under section 23.54. *Dincans*, 882 S.W.2d at 77. Dincans did not file a chapter-41 protest of his notice of appraisal (he alleged that he never received one). Nevertheless, he argued that section 23.54(e) provided "a requirement for notice to the taxpayer exclusive of the notice provision in section 25.19, such that even if Dincans did receive a notice of appraisal reflecting no agricultural use exemption, that HCAD's failure to give the notice in section 23.54 . . . would absolve him of his failure to protest." *Id.* HCAD contended, however, that because Dincans received a section-25.19 notice of the property's appraised value and did not timely protest under chapter 41, he failed to exhaust his administrative remedies. *Id.* at 76. We agreed with HCAD, rejecting Dincans's argument that he was not required to protest proper notice of appraised value.

First, we noted the applicable presumption when interpreting a statute: that the Legislature intended the entire statute to be effective. *Id.* at 77 (citing Tex. Gov't Code § 311.021(2)). "[I]t follows that an entire act within which the single statute

16

appears was intended to be effective as well." *Id.* (citing *Allegheny Mut. Cas. v. State*, 710 S.W.2d 139, 141 (Tex. App.—Houston [14th Dist.] 1986, no pet.)).  In other words, our interpretation had to give effect to both sections 23.54 and 25.19. *Id.*

We then considered the general principles that a party must exhaust its administrative remedies as to its property taxes before being entitled to judicial review, and that a trial court cannot gain jurisdiction over a cause where the party fails to comply with the administrative statutory scheme. *Id.* (citations omitted).  We noted the language of section 41.41 regarding a property owner's right to protest and noted that the statute specifically sets out a property owner's right to protest a determination that an owner's land does not qualify for appraisal under subchapter C of chapter 23, the provision concerning the agricultural-use exemption. *Id.* at 77–78; *see* Tex. Tax Code Ann. § 41.41(a)(1), (5).  We also noted how section 41.41 "includes a general right of protest for any action 'that applies to and adversely affects the property owner.'" *Dincans*, 882 S.W.2d at 78; *see* Tex. Tax Code Ann. § 41.41(a)(9).

Therefore, we concluded:

> [T]he remedy for the alleged erroneous appraisal of Dincans's two tracts of land at their full market value was to lodge a protest pursuant to the procedures outlined in section 41.  Failure to receive the notice and application under section 23.54(e) can be addressed in a protest before the appraisal board.  We find no conflict between the notice provision in 23.54 and that of 25.19 because of the primary significance of section 25.19 in being the first notice to a taxpayer that for whatever reason an agricultural use exemption had not been allowed.  In view of the plethora of cases placing the burden on the property owner to pursue his administrative remedy in a timely manner, we cannot accept [Dincans's] argument that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill.  To interpret sections 23.54 and 25.19 in such a manner would defeat the entire

17

scheme the tax code sets out for protesting and appealing actions of the appraisal board.

*Dincans*, 882 S.W.2d at 78. In other words, once (if) Dincans received his notice of appraised value that did not allow for the open-space exemption, he was required to timely lodge a protest under chapter 41.[8] *See id.*

Vitol asserts it was not required to file a protest with the ARB within 30 days of receiving its section-25.19 notice because the notice did not expressly state that the chief appraiser was cancelling or denying the IFC exemption pursuant to either section 11.43(h) or 11.45(d). This position, however, is irreconcilable with *Dincans*. Like the version applicable in this case, section 25.19 as applicable in *Dincans* provided that in a notice of appraised value the chief appraiser must include "the appraised value of the property for the current year and the kind and amount of each partial exemption, if any, approved for the current year." *Compare* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 107, 1981 Tex. Gen. Laws 117, 160 (reenacted 2005 and amended 2015) (current version at Tex. Tax Code § 25.19(b)(4)), *with* Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 11, 2005 Tex. Gen. Laws 1103, 1106. Comparing the respective "cancellation" notice provisions in chapters 11 and 23, section 11.43(h) substantively tracks much of the language of section 23.54(e)— similarly requiring the chief appraiser to investigate if a previously-allowed exemption should remain in place and, if not, requiring written notice. *Compare* Act

---

[8] Ultimately, where HCAD's stipulation as to Dincans's section-25.19 notice of appraised value for tax year 1984 did not track the language of section 1.07 and HCAD did not otherwise prove delivery of the notice, we found that Dincans was not bound by the general rule regarding exhaustion of administrative remedies. *Dincans*, 882 S.W.2d at 78–79 (affirming trial court's judgment to reinstate agricultural-use exemption for certain tax years). Section 41.411 was not at issue in *Dincans*—the Legislature did not add section 41.411 to allow for protest of lack of notice until 1985. Act of May 21, 1985, 69th Leg., R.S., ch. 504, § 1, 1985 Tex. Gen. Laws 2089, 2089 (amended 2007, 2011) (current version at Tex. Tax Code § 41.411). Here, Vitol does not dispute that it timely received the 2014 Notice.

of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 41, 1981 Tex. Gen. Laws 117, 132, *with* Act of Aug. 10, 1981, 67th Leg., 1st C.S., ch. 13, § 69, 1981 Tex. Gen. Laws 117, 144.  In addition, section 23.57, entitled "Action on Applications,"[9] closely tracks section 11.45 and contains a similar "denial" notice provision.  *Compare* Tex. Tax Code Ann. § 11.45, *with id.* § 23.57 (West 2015).[10]  We conclude that to interpret sections 11.43, 11.45, and 25.19 in the manner advanced by Vitol would permit Vitol to escape its burden to timely pursue its administrative remedies under chapter 41 and defeat the scheme for protesting and appealing set out in the Tax Code.  *See Dincans*, 882 S.W.2d at 78.

Vitol provides no persuasive authority to sustain its contention that sections

---

[9] We note that Dincans did not protest lack of notice under section 23.57.

[10] Section 23.57 provides:

(a) The chief appraiser shall determine separately each applicant's right to have his land appraised under this subchapter.  After considering the application and all relevant information, the chief appraiser shall, as the law and facts warrant:

    (1) approve the application and allow appraisal under this subchapter;

    (2) disapprove the application and request additional information from the applicant in support of the claim; or

    (3) deny the application.

(b) If the chief appraiser requests additional information from an applicant, the applicant must furnish it within 30 days after the date of the request or the application is denied.  However, for good cause shown the chief appraiser may extend the deadline for furnishing the information by written order for a single period not to exceed 15 days.

(c) The chief appraiser shall determine the validity of each application for appraisal under this subchapter filed with him before he submits the appraisal records for review and determination of protests as provided by Chapter 41 of this code.

(d) If the chief appraiser denies an application, he shall deliver a written notice of the denial to the applicant within five days after the date he makes the determination.  He shall include with the notice a brief explanation of the procedures for protesting his action and a full explanation of the reasons for denial of the application.

Tex. Tax Code Ann. § 23.57.

11.43 and 11.45 prevail over the notice provision in section 25.19. Vitol's cited cases are distinguishable; they involved circumstances where property owners filed a timely chapter-41 protest. *See Valero S. Tex. Processing Co. v. Starr Cty. Appraisal Dist.*, 954 S.W.2d 863, 866 (Tex. App.—San Antonio 1997, pet. denied) (after property owner's timely section-41.41 tax protest was heard, trial court had jurisdiction where owner filed section-41.411 protest based on deficient written notice of ARB order determining protest under section 41.47); *Gen. Elec.*, 819 S.W.2d at 919–20 (where property owner timely filed section-41.41 protest and ARB failed to schedule and notice hearing, there was no additional exhaustion requirement to protest under section 41.411). Vitol also relies on *Fina Oil & Chemical Co. v. Port Neches I.S.D.*, 861 S.W.2d 3, 7 (Tex. App.—Beaumont 1993, writ denied), where the appeals court concluded that jurisdiction existed despite the lack of timely protest by the property owner. *Fina Oil*, however, involved the particular circumstances of cancellation of a "negotiated abatement" contract with the taxing unit. *See id.* at 6–7. The two other courts to consider *Fina Oil* declined to follow it. *See Harris Cty. Appraisal Dist. v. Pasadena Prop., LP*, 197 S.W.3d 402, 406–07 (Tex. App.—Eastland 2006, pet. denied) (citing *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 632 (Tex. App.—Austin 2005, pet. denied), and *ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 156 (Tex. App.—Houston [1st Dist.] 2004, no pet.)); *ABT Galveston*, 137 S.W.3d at 156 & n.23.

Moreover, two of our sister courts have applied our observations in *Dincans*. *See MAG-T*, 161 S.W.3d at 631–32 (in circumstances where property owners did not protest allegedly defective notice of amended appraisal, rejecting argument "that would permit a property owner to do nothing when confronted with an obviously erroneous tax bill" in upholding trial court's grant of plea to jurisdiction); *ABT*

20

*Galveston*, 137 S.W.3d at 152–53, 157–58 (in context of late-filed protest based in part on failure to provide proper notice under sections 11.43(h) and 25.19, holding that property owners' "failure to pursue and to exhaust the administrative remedies available to them under the Code to protest the taxing authorities' assessment and collection of the 1996 property taxes on the facility was not excused by any alleged failure of the taxing authorities to provide or timely deliver the notices of which [property owners] complain" and affirming trial court's grant of summary judgment based on lack of subject-matter jurisdiction).

Vitol's other arguments that the 2014 Notice failed to trigger Vitol's protest deadline also lack merit. Vitol argues that it would be "nonsensical" to require a protest within 30 days of the 2014 Notice because it only reflected "inaction" by the chief appraiser as opposed to a final determination. While the 2014 Notice did not contain the term "deny," "cancel," or "modify," it expressly stated that "0" exemptions had been "granted" for Vitol's inventory and that the estimated taxes for tax year 2014 for the property were over $355,000. Setting an appraised value, not granting any requested exemptions, and estimating taxes based on that appraised value does not constitute "inaction." Nor does chapter 41 indicate that a property owner must wait for a "final" action before protesting. In addition to allowing for protests from denials of exemptions, section 41.41 expressly entitles a protest from "any" adverse action by the chief appraiser. *See* Tex. Tax Code Ann. § 41.41(a)(4), (9). That Vitol's requested IFC exemption had not been granted or allowed to reduce Vitol's appraised value for the tax year falls within section 41.41(a)(9). *See Dincans*, 882 S.W.2d at 78; *see also Pasadena Prop.*, 197 S.W.3d at 404 (property owner timely filed protest based on lack of pollution-control exemption in tax bill under section 41.41(a)(9)).

We also do not agree with Vitol that a section-25.19 notice merely provides

21

"limited information." Proper section-25.19 notice provides information not only about the property's appraised value, but also about the kind and amount of partial exemptions approved for the property. *See* Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 11, 2005 Tex. Gen. Laws 1103, 1106. Under the Tax Code, a property's "taxable value" is determined using a property's "assessed value," which is determined using the property's "appraised value," and subtracting "any applicable partial exemption." *See* Tex. Tax Code Ann. §§ 1.04(8)–(11) (West 2015) (defining "appraised value," "assessed value," "taxable value," and "partial exemption"). Therefore, section-25.19 notice provides information directly bearing on the assessment of property taxes. *See Thames Shipyard & Repair Co. v. Galveston Cent. Appraisal Dist.*, No. 14-10-01142-CV, 2011 WL 5042836, at *3 (Tex. App.— Houston [14th Dist.] Oct. 25, 2011, no pet.) (mem. op.) (property owner has actual notice of tax assessment against it where it receives notice of appraisal and must exhaust administrative remedies).

Vitol contends that it only sought a "full exemption like the IFC exemption," and notice under section 25.19 instead provides information about "partial exemptions." *See* Act of May 27, 2005, 79th Leg., R.S., ch. 412, § 11, 2005 Tex. Gen. Laws 1103, 1106. However, the Tax Code does not define "full exemption." And the definition of "partial exemption" does not preclude a situation where the "part" of the value of the taxable property covered by the "partial exemption" happens to include all of it. *See* Tex. Tax Code Ann. § 1.04(11) ("'Partial exemption' means an exemption of part of the value of taxable property."); *see also id.* § 1.04(10) ("taxable value" determined by deducting any "partial exemption").

In addition, Vitol attempts to excuse its lack of timely protest and failure to exhaust its administrative remedies by placing blame on HCAD representatives who allegedly orchestrated a "gotcha" scenario and "induced Vitol to not file a formal

protest." However, "[a] party cannot by his own conduct confer jurisdiction on a court when none exists otherwise." *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294–95 (Tex. 2001) (per curiam). Texas courts have refused to excuse failures by property owners to timely protest and exhaust administrative remedies under similar circumstances involving allegedly misleading behavior. *See id.* ("Even if the District misled Sullivan as she claims, her failure to exhaust her administrative remedies is fatal to her action."); *Horton v. Tex. Dep't of Family & Protective Servs.*, No. 13-16-00377-CV, 2017 WL 2180685, at *5 (Tex. App.— Corpus Christi May 18, 2017, no pet. h.) (mem. op.) ("[E]ven if the Department affirmatively misled Horton, as he claims, by giving him improper instructions and 'luring' him into a 'trap,' the Department could not have, by its own conduct, conferred jurisdiction on the trial court by either estoppel or waiver of immunity because no jurisdiction existed otherwise." (citing *Sullivan*, 51 S.W.3d at 294–95)); *Interstate Apartment Enters., L.C. v. Wichita Appraisal Dist.*, 164 S.W.3d 448, 452– 53 (Tex. App.—Fort Worth 2005, no pet.) ("[E]ven if [appraisal district] misled appellant by providing inaccurate or incomplete information regarding which administrative remedy appellant should pursue, such conduct did not confer jurisdiction on the trial court." (citing *Sullivan*, 51 S.W.3d at 294)).

It is undisputed that Vitol received a notice of appraised value for its inventory for tax year 2014 on June 20, 2014. The language of the 2014 Notice communicated that the appraised value of the property for tax year 2014 was $15,224,054. The 2014 Notice plainly indicated that "0" exemptions had been granted on the property and that "this year's value after exemptions" was $15,224,054. The 2014 Notice constituted notice to Vitol as a taxpayer that for whatever reason the IFC exemption had not been allowed on its property. *See Dincans*, 882 S.W.2d at 78. Once Vitol received this notice, Vitol was entitled to lodge a chapter-41 protest with the ARB

based on the IFC exemption and had until July 21, 2014, to do so.  *See* Tex. Tax Code Ann. §§ 41.41(a)(9), 41.44(a)(2) ("[T]o be entitled to a hearing and determination of a protest, the property owner initiating the protest must file a written notice of the protest with the appraisal review board having authority to hear the matter protested . . . before June 1 or not later than the 30th day after the date that notice was delivered to the property owner as provided by Section 25.19 in connection with any other property, whichever is later").  Despite timely receipt of the 2014 Notice, it is undisputed that Vitol did not file any written protest with the ARB until November 5, 2014.[11]

Under these circumstances, even based on the record as viewed in the light most favorable to Vitol, we conclude as a matter of law that Vitol did not file a timely protest under chapter 41 and failed to exhaust its administrative remedies.  Because the trial court did not err in granting HCAD's plea to the jurisdiction, we overrule Vitol's first issue.[12]

## E. Motion for continuance

 "Because the trial court has firsthand knowledge of the development of a case, reviewing courts apply an abuse-of-discretion standard of review to a trial

---

[11] Vitol "does not argue that its emails with [HCAD] serve as an informal protest."

[12] We likewise reject Vitol's due-process arguments.  In tax cases, due process is satisfied if the taxpayer is given an opportunity to be heard before an assessment board at some stage of the proceedings.  *See* Tex. Tax Code Ann. §§ 41.41, 41.44, 41.411; *ABT Galveston*, 137 S.W.3d at 155 (noting that due process affords only right to be heard before final assessment and does not detail mechanism of review); *CIT Leasing*, 115 S.W.3d at 266 ("The addition of section 41.411, however, provided the due process protections absent under prior statutory procedure.").  A taxpayer such as Vitol who chooses not to take advantage of available opportunities cannot demonstrate a due-process violation.  *See Waobikeze v. Fort Bend Cty.*, No. 01-13-00181-CV, 2014 WL 4345085, at *2 (Tex. App.—Houston [1st Dist.] Aug. 29, 2014, no pet.) (mem. op.); *City of San Antonio ex rel. City Pub. Serv. Bd. v. Bastrop Cent. Appraisal Dist.*, 275 S.W.3d 919, 925 (Tex. App.—Austin 2009, pet. dism'd); *Blue Flash Express*, 2007 WL 1412651, at *8; *MAG-T*, 161 S.W.3d at 631–32.

court's decision on whether to grant a continuance of a plea-to-the-jurisdiction hearing to allow additional discovery." *Quested v. City of Houston*, 440 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Patten v. Johnson*, 429 S.W.3d 767, 776 (Tex. App.—Dallas 2014, pet. denied)); *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (same in summary-judgment context). We may reverse only if the trial court's decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Quested*, 440 S.W.3d at 280 (citing *Joe*, 145 S.W.3d at 161, and *Klumb v. Houston Municipal Emps. Pension Sys.*, 405 S.W.3d 204, 227 (Tex. App.—Houston [1st Dist.] 2013), *aff'd*, 458 S.W.3d 1 (Tex. 2015)).

Where the parties do not dispute the essential facts presented on the jurisdictional issue but instead simply dispute the legal significance of that evidence, we review the jurisdictional issue as a matter of law. *See Univ. of Tex. Health Sci. Ctr. at Houston v. McQueen*, 431 S.W.3d 750, 756–57 (Tex. App.—Houston [14th Dist.] 2014, no pet.). For this reason, a trial courts acts within its discretion in denying a continuance of a hearing on a plea to the jurisdiction based on a request for more discovery where the requested discovery does not have any legal impact on the jurisdictional analysis in the case. *See, e.g., Joe*, 145 S.W.3d at 161–62 (trial court did not abuse its discretion in denying motion for continuance for jurisdictional discovery where discovery sought was not material to issue of official immunity); *Quested*, 440 S.W.3d at 282–83 (same where no showing that jurisdictional discovery sought was material to assessment of plea); *Klumb*, 405 S.W.3d at 227–28 (same where "[n]one of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea").

Here, the legal issue for jurisdictional purposes is whether Vitol was required to timely protest the 2014 Notice based on the proper interpretation of the Tax Code.

*See Klumb*, 405 S.W.3d at 227 (determination of jurisdictional issue was based on "the statutory language, the allegations in Plaintiffs' pleadings, and basic documents"). We already have concluded that Vitol was required to do so, and the undisputed evidence demonstrated that Vitol did not. Additional discovery into the allegedly "gotcha" behavior of HCAD could not confer jurisdiction that did not otherwise exist. *See Sullivan*, 51 S.W.3d at 294–95; *Horton*, 2017 WL 2180685, at *4–5; *Interstate Apartment Enters.*, 164 S.W.3d at 452–53.

Therefore, we conclude the trial court properly could have determined that Vitol's requested additional discovery was not material or necessary in determining HCAD's plea to the jurisdiction. *See Joe*, 145 S.W.3d at 162; *Quested*, 440 S.W.3d at 283; *Klumb*, 405 S.W.3d at 227–28; *see also In re Torres*, No. 13-17-00172-CV, 2017 WL 2665986, at *5 n.9 (Tex. App.—Corpus Christi June 21, 2017, no pet. h.) (mem. op.) ("[T]rial courts act within their discretion in denying continuances of hearings on pleas to the jurisdiction based on a request for more discovery where the requested discovery does not impact the jurisdictional analysis in the case.").

Because the trial court did not abuse its discretion in denying Vitol's motion to continue the hearing on HCAD's plea, we overrule Vitol's second issue.

## III.     CONCLUSION

Having overruled both of Vitol's issues, we affirm the trial court's judgment dismissing Vitol's claims against HCAD for lack of subject-matter jurisdiction.

/s/     Marc W. Brown
Justice

Panel consists of Justices Boyce, Jamison, and Brown.

26