**Appellee's Motion to Dismiss Denied; Reversed and Remanded and Memorandum Opinion filed March 3, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00798-CV

---

### ZEON CHEMICALS, L.P., Appellant

### V.

### HARRIS COUNTY APPRAISAL DISTRICT, Appellee

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2019-22697**

---

## M E M O R A N D U M   O P I N I O N

Appellant Zeon Chemicals, L.P. ("Zeon") filed motions to correct an alleged clerical error in the freeport-exemption applications it submitted to appellee Harris County Appraisal District ("HCAD"). HCAD denied Zeon's motions to correct and Zeon sought judicial review in the trial court. The trial court granted HCAD's plea to the jurisdiction and dismissed Zeon's claims. For the reasons below, we reverse the trial court's final judgment dismissing the case for want of jurisdiction

and remand the case to the trial court for further proceedings.

## BACKGROUND

We begin with a brief overview of the relevant Texas Tax Code provisions before delving into the facts of this case.

### *Tax Code Provisions*

Each year, HCAD's chief appraiser prepares a record of all taxable property in the district and states the appraised value for each. Tex. Tax Code Ann. § 25.01(a). The Harris County Appraisal Review Board (the "Board") then examines HCAD's appraisal records to determine whether (1) the appraisals are substantially uniform, (2) the exemptions are properly granted, and (3) the appraisal records conform to legal requirements. *See id*. §§ 6.01, 41.01. The appraisal records with amounts of tax entered as approved by the Board become the appraisal roll. *See id*. § 25.24.

"The Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam); *see generally* Tex. Tax Code Ann. chs. 41-42. Property owners generally must exhaust their administrative remedies before seeking judicial review. *Fort Bend Cent. Appraisal Dist. v. McGee Chapel Baptist Church*, 611 S.W.3d 443, 448 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Pursuant to chapter 41, property owners are entitled to administratively protest certain actions to the Board including, as relevant here, a "determination of the appraised value of the owner's property" and a "denial to the property owner in whole or in part of a partial exemption." Tex. Tax Code Ann. § 41.41(a)(1), (4). A property owner generally must file a written notice of protest within thirty days

2

after the owner receives notice of the appraised value of the property. *Id.* § 41.44(a); *see also Vitol, Inc. v. Harris Cty. Appraisal Dist.*, 529 S.W.3d 159, 167 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Board must schedule and hold a hearing on the property owner's protest. Tex. Tax Code Ann. § 41.45.

Property owners also may rely on Texas Tax Code section 25.25(c)(1) for correction of appraisal roll errors under certain limited circumstances:

(c) The appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll for any of the five preceding years to correct:

(1) clerical errors that affect a property owner's liability for a tax imposed in that tax year[.]

*Id.* § 25.25(c)(1).

A property owner is entitled to appeal an order of the Board determining a protest filed pursuant to chapter 41 or a motion filed under section 25.25(c)(1). *Id.* § 42.01(a)(1)(A), (B).

***The Underlying Dispute***

Zeon produces and sells chemicals throughout the United States and foreign countries. Zeon's chemicals in Harris County are identified by four separate business personal property account numbers.[1]

HCAD previously has granted Zeon a partial freeport exemption with respect to the inventory in these four accounts. *See id.* § 11.251(a), (b) (providing tax exempt status for inventory transported out of Texas within 175 days of being brought into or acquired in the state). For the 2018 tax year, Zeon completed freeport-exemption applications for its four accounts. In relevant part, these applications state:

---

[1] These account numbers are 436055, 2225194, 1006933, and 2220041.

3

| | | |
|---|---|---|
| 4. | Total cost of goods sold for the entire year ending Dec. 31, 2017 | $46,988,751.00 |
| 5. | Total cost of goods sold that were shipped out of Texas within the applicable time frame after you acquired them in or brought them into Texas last year, less the cost of any goods, raw materials or supplies incorporated into them that were not eligible for the freeport exemption or were in Texas for more than the applicable number of days. | $26,193,892.00 |

*      *      *

| | | |
|---|---|---|
| 7. | Percentage of last year's value represented by freeport goods (line 5 divided by line 4) | 92.58% |
| 8. | Will the percentage of goods transported out of Texas this year be significantly different than the percentage transported out last year? | No |

In May and June 2018, Zeon received from HCAD a "Notice of Appraised Value" for each of the four accounts. The notices list each account's appraised value for tax year 2018 and for the prior year. The notices also show that each account was granted a freeport exemption for 2018; however, each account's exemption was less than it had been for the prior year.[2]

Zeon filed a written notice of protest with the Board challenging each

---

[2] Specifically, the notices show that each account's exemption amount changed as follows:

- 436055: $2,093,562 to $1,768,078;
- 2225194: $35,183 to $24,458;
- 1006933: $71,114 to $68,845; and
- 2220041: $12,757,057 to $4,166,814.

account's appraised value. *See id.* §§ 41.41(a)(1), 41.44(a)(2). Zeon and HCAD reached an agreement on the appraised value for three of the four accounts. *See id.* § 1.111(e). After holding a hearing on the remaining account, the Board mailed Zeon an "Order Determining Protest," stating that the account's appraised value was reduced by one dollar.

In July 2018, Zeon filed an amended freeport-exemption application for each of the four accounts. The only change on the applications was Zeon's response to Question No. 4, which asked for the "Total cost of goods for the entire year ending Dec. 31, 2017." Whereas Zeon's original applications listed "$46,988,751.00" for this question, the amended applications listed "$28,293,332.00." Zeon's tax appraiser also sent a letter to HCAD stating:

> We are requesting a Correction of the 2018 Appraisal Roll for the four (4) Zeon accounts referenced above . . . .
>
> Background: a Freeport application was filed for each of the above referenced accounts, indicating a 92.58% exemption on the company's inventory. This % is the correct amount and is consistent with the % for which Zeon qualifies each year. However, we inadvertently put the wrong Cost of Goods Sold on the original forms which, when calculated, indicated a Freeport exemption of only 55.75%. As a result, Zeon was approved for an exemption smaller than what they were due.
>
> When we realized our error, we filed Amended applications with the correct COGS. However, the values for those accounts had been certified before the Amended applications were received, and the Freeport exemption amount remains smaller than it should be.
>
> We are therefore respectfully requesting that the 2018 Appraisal Roll be corrected for these four (4) accounts to reflect the correct Freeport amount of 92.58%.

In an email sent August 30, 2018, HCAD refused to accept the amended applications and stated that, "[a]t this point the accounts [are] certified with 55.75% freeport exemption and there are no options to amend/correct the

5

percentage for 2018."

Zeon then filed motions to correct the appraisal roll pursuant to Tax Code section 25.25(c)(1), asserting that the figures it sought to correct were the result of a "clerical error." *See id*. § 25.25(c)(1). The Board scheduled hearings on Zeon's motions. The Board ultimately determined that no errors existed and that the appraisal roll should not be changed. The Board issued four orders reflecting its determination.

### *Trial Court Proceedings*

Zeon appealed the orders denying its section 25.25(c)(1) motions by filing a petition for review in the trial court. *See id*. §§ 42.01(a)(1)(B), 42.21(a). HCAD filed a combined plea to the jurisdiction and motion for summary judgment. The trial court granted HCAD's plea to the jurisdiction in an order signed September 1, 2020 and dismissed all Zeon's claims. Zeon filed a request for findings of fact and conclusions of law, but none were issued.

Zeon filed a notice of appeal. HCAD filed a motion to dismiss the appeal, which was carried with the case.

### ANALYSIS

We begin by addressing HCAD's motion to dismiss before turning to the merits of Zeon's appeal.

### I. Motion to Dismiss

In its motion to dismiss and appellate briefing, HCAD argues that we lack jurisdiction because Zeon's notice of appeal was not timely filed.

Generally, a notice of appeal of a final judgment must be filed within thirty days after the entry of judgment. *See* Tex. R. App. P. 26.1. However, certain post-

6

judgment filings may extend the deadline to ninety days after the entry of judgment. *See* Tex. R. App. P. 26.1(a). These deadline-extending filings include "a request for findings of fact and conclusions of law if findings and conclusions either are required by the Rules of Civil Procedure or, if not required, could properly be considered by the appellate court." Tex. R. App. P. 26.1(a)(4).

Here, the trial court signed a final judgment on September 1, 2020, and Zeon filed a request for findings of fact and conclusions of law on September 18, 2020. The trial court did not issue any findings or conclusions and Zeon filed a notice of appeal on November 25, 2020. Accordingly, the notice of appeal is timely only if Zeon's requested findings and conclusions fall within those described by Texas Rule of Appellate Procedure 26.1(a)(4). Asserting that they do not, HCAD argues that findings of fact are not appropriate in this case and do not extend the appellate timetable.

Our analysis of this issue is governed by the Texas Supreme Court's recent decision in *Phillips v. McNeill*, 635 S.W.3d 620 (Tex. 2021). There, the court examined whether the plaintiff's request for findings of fact and conclusions of law extended the deadline to file his notice of appeal. *See id*. at 623. The court adopted a two-step inquiry for this determination: first, was the proceeding a type in which the trial court could consider evidence? *Id*. at 625. Second, was there evidence before the trial court? *Id*.

Describing the first inquiry as "categorical," the court explained that it includes any judgment "that could be based in any part on an evidentiary hearing." *Id*. The court described the second inquiry as "case-specific and focus[ing] on whether evidence was presented to the trial court, not whether that evidence proved to be necessary in hindsight." *Id*. Continuing on, the court stated that, "when a party submits evidence but the trial court is silent or the record is unclear regarding

whether it considered that evidence, the second question should be answered yes." *Id*. at 626. Moreover, "[i]n uncertain cases, courts should break any tie in favor of the timeliness of the appeal." *Id*. at 627.

Applying this two-part inquiry here, we conclude that findings could properly be considered on appeal and therefore Zeon's request extended the appellate timetable. *See id*. at 625-27. Regarding the first question, the trial court rendered judgment on HCAD's plea to the jurisdiction, which is a type of non-jury proceeding in which evidence can be considered. *See SPX Corp. v. Altinger*, 614 S.W.3d 362, 369 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("Parties may submit evidence supporting or opposing the plea [to the jurisdiction], which we review applying the same standard applicable to a traditional motion for summary judgment."). For the second question, both HCAD and Zeon presented evidence to the trial court — evidence that, as our analyses below show, the trial court likely considered to resolve the issues presented in HCAD's plea. *See Phillips*, 635 S.W.3d at 626 ("The question is not whether the trial court *had* to consider evidence to render judgment, but whether it received evidence it *could* consider.") (emphases in original).

Because the trial court received evidence for its resolution of HCAD's plea to the jurisdiction and Zeon requested findings, Zeon's appellate deadline was ninety days from the rendition of the trial court's final judgment. *See* Tex. R. App. P. 26.1(a)(4). Zeon's notice of appeal filed on the eighty-fifth day therefore was timely and we may properly exercise jurisdiction over the appeal.

We deny HCAD's motion to dismiss.

## II. Plea to the Jurisdiction

Raising two substantive issues on appeal, Zeon contends the trial court erred

8

by (1) granting HCAD's plea to the jurisdiction, and (2) failing to file findings of fact and conclusions of law. We begin with Zeon's second issue regarding its request for findings and conclusions.

### A. Findings of Fact and Conclusions of Law

As discussed above, Zeon filed a request for findings of fact and conclusions of law shortly after the trial court signed a final judgment. The trial court did not issue any findings or conclusions. On appeal, Zeon asserts that this omission constitutes error.

Findings of fact and conclusions of law must be requested within twenty days after judgment and, if no findings and conclusions are filed, the requesting party must file a notice of past due findings within thirty days of its original request. *See* Tex. R. Civ. P. 296, 297. A party who fails to file a notice of past due findings and conclusions, or files an untimely notice, waives a complaint on appeal regarding a trial court's failure to file findings of fact and conclusions of law. *See, e.g.*, *Watts v. Oliver*, 396 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 183 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Here, Zeon filed a request for findings and conclusions, but the record does not show that it filed a notice of past due findings and conclusions. Therefore, Zeon waived its complaint that the trial court erred by failing to file findings of fact and conclusions of law. *See Watts*, 396 S.W.3d at 131; *Haut*, 376 S.W.3d at 183.

We overrule Zeon's second issue.

### B. Merits of the Plea to the Jurisdiction

In its plea to the jurisdiction, HCAD raised two arguments to support its contention that the trial court lacked jurisdiction over Zeon's claims: (1) Zeon and

HCAD reached an agreement as to three of the accounts' appraised values and those agreements foreclose Zeon's ability to seek judicial review of its section 25.25(c)(1) motions to correct, and (2) Zeon failed to exhaust the administrative remedies available to protest the denial in whole or in part of a partial exemption under Texas Tax Code section 41.41(a)(4).

In its appellate briefing, HCAD argues that (1) Zeon cannot rely on Texas Tax Code section 25.25(c)(1) to challenge the denial of a partial exemption, and (2) the errors Zeon points to are not "clerical errors" as that term is used in section 25.25(c)(1).

Zeon contends that none of these arguments provide a basis to affirm the trial court's order granting HCAD's plea to the jurisdiction. We address these arguments below, beginning with the applicable standard of review. *See Dallas Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013) (per curiam) ("an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all").

### 1. Standard of Review

The existence of subject matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review a trial court's ruling on a plea *de novo*. *See Miranda*, 133 S.W.3d at 226, 228; *Vitol, Inc.*, 529 S.W.3d at 165-66.

Where, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 369 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015). The standard of review for

a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Miranda*, 133 S.W.3d at 228.

Under this standard, we credit as true all evidence favorable to the nonmovant and draw all reasonable inferences in the nonmovant's failure. *Id*.; *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 228 ("By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction.") (internal quotation and citation omitted). If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction or the plea will be sustained. *Id*.

### 2. *The Parties' Agreements Do Not Foreclose Zeon's Section 25.25(c)(1) Motions.*

Zeon filed protests with the Board to challenge each account's appraised value and the parties reached an agreement as to three of the four accounts. With respect to two of the accounts, the Board issued to Zeon letters stating, in relevant part:

> On this day[,] the Harris County Appraisal Board considered a motion and/or protest relating to the property and tax years described. During the course of the hearing, and before the Board made a final determination, the Property Owner or the Owner's representative entered into an agreement on all issues with the Chief Appraiser through his representative. The agreed property value is:

Following this paragraph, each letter listed the account's agreed appraised value.

For the third settled account, the Board's letter to Zeon stated:

> This letter confirms that the chief appraiser has approved the protest settlement agreement you or your representative entered into with the Harris County Appraisal District concerning the value of your property. The agreed property value is:

Following this paragraph, the letter listed the agreed appraised value for the third account.

In its plea to the jurisdiction, HCAD argued that these agreements were final and could not be contested in a judicial appeal, thus depriving the trial court of jurisdiction over Zeon's petition for review.

If parties enter into an agreement pursuant to Texas Tax Code section 1.111(e), the trial court is deprived of jurisdiction over the issues resolved by that agreement. *See Curry v. Harris Cty. Appraisal Dist.*, 434 S.W.3d 815, 822 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The parties do not contest that the agreements entered into with respect to three of Zeon's four accounts constitute section 1.111(e) agreements.

In relevant part, section 1.111(e) states:

> An agreement between a property owner or the owner's agent and the chief appraiser is final if the agreement relates to a matter:
> (1)   which may be protested to the appraisal review board or on which a protest has been filed but not determined by the board; or
> (2)   which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the board.

Tex. Tax Code Ann. § 1.111(e). Agreements under this section "are final and not subject to protest by the property owners or subject to a property owner's statutory suit for judicial review under chapter 42." *Houston Cement Co. v. Harris Cty. Appraisal Dist.*, No. 14-12-00491-CV, 2013 WL 3243281, at *2 (Tex. App.—

12

Houston [14th Dist.] June 25, 2013, no pet.) (mem. op.) (internal quotation omitted). Accordingly, the preclusive effect of a section 1.111(e) agreement properly may be raised in a plea to the jurisdiction. *See, e.g.*, *Harris Cty. Appraisal Dist. v. McDonald*, No. 01-19-00990-CV, 2021 WL 3556215, at *3-5 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, no pet.) (mem. op.); *Houston Cement Co.*, 2013 WL 3243281, at *2-3.

But section 1.111(e) agreements only foreclose judicial review with respect to those matters to which they "relate[]". *See* Tex. Tax Code. Ann. § 1.111(e). Applying this concept, we have focused on the specific terms of the section 1.111(e) agreements at issue. *See, e.g.*, *Houston Cement Co.*, 2013 WL 3243281, at *2; *Sondock v. Harris Cty. Appraisal Dist.*, 231 S.W.3d 65, 69 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

For example, in *Houston Cement Co.*, HCAD appraised the property owner's business personal property and the owner protested the appraised value. 2013 WL 3243281, at *1. HCAD and the property owner subsequently agreed to an amended appraised value and executed written agreements that "include[d] itemized descriptions of the initial and final appraised values of several types of property, including inventory." *Id*.

Afterwards, the property owner filed a section 25.25(c) motion to correct arguing that, due to clerical errors, the agreed appraised value improperly included certain inventory that had been in transit and not located in Harris County at the relevant times. *Id*. The Board dismissed the property owner's motion and the owner appealed. *Id*. In the trial court, HCAD filed a plea to the jurisdiction arguing that the parties' section 1.111(e) agreements rendered the appraised values final. *Id*.

Affirming the trial court's order granting HCAD's plea, we noted that the

13

parties' written agreements specifically addressed the owner's inventory:

> [The property owner's] argument that the agreements did not relate to inventory is contrary to the plain language of the agreements. [The property owner] and HCAD clearly expressed harmony of opinion as to the final values of [the owner's] combined business personal property and of its inventory in the signed, specifically written agreements.

*Id*. at *2. "[B]ecause the value of inventory was a specific matter to which the agreements related, the agreements precluded [the property owner's] lawsuit[.]" *Id*. at *3.

Similarly, in *Sondock*, the property owners protested their property's appraised value and subsequently reached an agreement with HCAD on the issue. 231 S.W.3d at 67-68. The Board issued an "Order Determining Protest" memorializing the appraised value at the agreed amount and the property owners appealed the order to the trial court. *Id*. at 68. The trial court granted summary judgment on grounds that the parties' section 1.111(e) agreement precluded further review of the appraised value. *Id*.

Affirming the summary judgment, we held that:

> [t]here can be no doubt that at the time HCAD "concurred" with the [property owners'] valuation, there was harmony of opinion between the [owners] and HCAD as to the value of the property for approximately $880,000 . . . . Because the agreement related to such a matter, at the moment it was reached, it became final.

*Id*. at 69.

In contrast to *Houston Cement Co.* and *Sondock*, the evidence here does not show Zeon and HCAD reached an agreement that "relate[d]" to the issues raised in Zeon's section 25.25(c)(1) motions to correct, *i.e.*, the values of Zeon's freeport exemptions. *See* Tex. Tax Code Ann. § 1.111(e).

14

As discussed above, Zeon protested each of its accounts' appraised value and reached an agreement with HCAD regarding three of the four accounts. The Board issued three letters to Zeon memorializing the parties' agreements. These letters state that the parties agreed as to each account's "property value," which was followed by the account's agreed appraised value. The letters do not show that the parties discussed or reached any agreement regarding the freeport exemption applicable to each account.

The record does not contain any other evidence pertaining to the parties' section 1.111(e) agreements. Therefore, the evidence fails to show that Zeon and HCAD reached an agreement that "relate[d]" to Zeon's claimed freeport exemptions as necessary to preclude further review of these issues. *See id.*; *see also Houston Cement Co.*, 2013 WL 3243281, at *2; *Sondock*, 231 S.W.3d at 69.

The trial court's order granting HCAD's plea to the jurisdiction cannot be sustained on this basis. *See Miranda*, 133 S.W.3d at 228.

### *3. Zeon is Not Limited to Seeking Relief Through Section 41.41.*

Asserting that Zeon's section 25.25(c)(1) motions essentially request a redetermination of the percentage of the freeport exemptions granted by HCAD, HCAD contends that section 25.25(c)(1) "does not provide for a review of exemption determinations." Rather, HCAD argues, Zeon was limited to the procedures in section 41.41 to protest the "denial to the property owner in whole or in part of a partial exemption." *See* Tex. Tax Code Ann. § 41.41(a)(4). Because Zeon did not pursue its complaints through section 41.41, HCAD asserts that its challenges to the freeport exemptions are waived.

We reject this argument. Texas Tax Code section 25.25(l) states that "[a] motion may be filed under subsection (c) regardless of whether, for a tax year to which the motion relates, the owner of the property protested under Chapter 41 an

15

action relating to the value of the property that is the subject of the motion." *Id.* § 25.25.(l). Therefore, Zeon was not required to concurrently pursue its freeport-exemption challenge via a chapter 41 protest. *See id.*

A similar argument also was rejected in *Dallas Central Appraisal District v. Sears Roebuck & Co.*, No. 05-97-01382-CV, 2000 WL 1195684 (Tex. App.— Dallas Aug. 23, 2000, no pet.). There, the appraisal district mistakenly transposed account numbers for two of Sears' warehouses. *Id.* at *1. When Sears received the notice of appraised value for one of the accounts, it did not notice the account reflected the wrong physical address. *Id.*

Sears later became aware of the transposed account numbers and filed a section 25.25(c) motion to correct the appraisal roll for both warehouses. *Id.* at *2. On appeal, the appraisal district argued Sears could not use a section 25.25(c) motion to correct the appraisal roll because Sears "failed to file a timely 'protest' of the . . . appraisal pursuant to chapter 41 of the tax code." *Id.* at *3. Rejecting this argument, the court held:

> We disagree that section 25.25(c) will not allow a change in the appraised value of property. While section 25.25(c) precludes disputes based solely on property valuation, it allows a correction of the tax appraisal roll when there has been a clerical error . . . . ***Relief granted under section 25.25(c) may necessitate a change in the value of the property reflected on the appraisal roll***. To interpret the statute to preclude such corrections would eliminate a remedy the legislature obviously created to avoid such injustices.

*Id.* (emphasis added). Further reinforcing its conclusion, the court noted that "[t]axing statutes are construed strictly against the taxing authority and liberally for the taxpayer." *Id.*; *see also City of Houston v. Hotels.com, L.P.*, 357 S.W.3d 706, 712 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ("A taxing provision is construed strictly against the taxing authority and liberally in favor of the entity

16

that the authority seeks to hold liable[.]").

This reasoning similarly forecloses the argument HCAD advances here. Zeon's section 25.25(c)(1) motions may necessitate changes in the percentage value of its accounts' freeport exemptions — but this does not require that Zeon's arguments also be advanced through a section 41.41(a)(4) protest. *See Sears Roebuck & Co.*, 2000 WL 1195684, at \*2-3.

Accordingly, this argument does not provide a basis to affirm the trial court's order granting HCAD's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228.

### 4.    HCAD Failed to Prove That Zeon's Section 25.25(c)(1) Motions Do Not Advance a "Clerical Error."

HCAD also argues that, as a matter of law, the error Zeon seeks to correct in its section 25.25(c)(1) motions is not a clerical error.

As we stated above, section 25.25(c)(1) permits the correction of "clerical errors that affect a property owner's liability for a tax imposed in that tax year." Tex. Tax Code Ann. § 25.25(c)(1). Whether an alleged mistake constitutes a clerical error may be raised in a plea to the jurisdiction. *See, e.g.*, *McDonald*, 2021 WL 3556215, at \*4 ("the property owner's correction motion is subject to judicial review only if it alleges a clerical error susceptible to correction").

The Texas Tax Code defines "clerical error" as an error:

(1) that is or results from a mistake or failure in writing, copying, transcribing, entering or retrieving computer data, computing, or calculating; or

(2) that prevents an appraisal roll or a tax roll from accurately reflecting a finding or determination made by the chief appraiser, the appraisal review board, or the assessor; however, "clerical error" does not include an error that is or results from a mistake in

judgment or reasoning in the making of the finding or determination.

Tex. Tax Code Ann. § 1.04(18).  Whether an alleged error constitutes a clerical error is a question of law we review *de novo*.  *See, e.g.*, *McDonald*, 2021 WL 3556215, at *4; *Stacy Family Enters., Inc. v. Tarrant Appraisal Dist.*, No. 02-13-00170-CV, 2013 WL 6564299, at *3 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (mem. op.).

A clerical error is one that is not the result of judicial reasoning or determination, but instead occurs when a judgment is reduced to writing.  *Lack's Valley Stores, Ltd. v. Hidalgo Cty. Appraisal Dist.*, No. 13-10-500-CV, 2011 WL 2475843, at *3 (Tex. App.—Corpus Christi June 23, 2011, pet. denied) (mem. op.) (citing *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam)).  Section 25.25(c)(1) motions are not intended to substantively change the underlying process used to arrive at certain figures; rather, they are intended to correct errors that are "ministerial" or "objective."  *See Stacy Family Enters., Inc.*, 2013 WL 6564299, at *3.

Courts have analyzed the concept of "clerical error" in a variety of circumstances.  For example, in *McDonald*, the property owner filed a section 25.25(c)(1) motion asserting that HCAD's appraisal of its property failed to take into account certain city ordinances that restricted the property's use.  2021 WL 3556215, at *4.  Concluding that this was not a clerical error subject to correction via a section 25.25(c)(1) motion, our sister court held that "the property owner does not seek to correct a mathematical error in calculation, but to include another factor in the methodology used to arrive at the appraised value of the property." *Id*. at *5.

In *Stacy*, the property owner's section 25.25(c)(1) motion asserted that the

18

appraisal district failed to conduct an independent evaluation of the owner's inventory and "made no deductions for depreciation as it should have in accordance with the tax code's cost-method formula." 2013 WL 6564299, at *1. Holding that this was not a clerical error, the court stated that the property owner did "not allege that [the appraisal district] transported any numbers, copied the wrong figures, or committed any errors in adding, subtracting, multiplying, or dividing" but rather sought a "substantive re-evaluation of the property's market value." *Id*. at *4; *see also Lack's Valley Stores, Ltd.*, 2011 WL 2475843, at *3 ("[t]he failure to account for depreciation is outside of the scope intended by the definition of 'clerical error'").

In *Dallas Central Appraisal District v. Southwest Airlines Co.*, Southwest filed a section 25.25(c)(1) motion to correct the allocated value of its aircraft fleet. No. 05-10-00682-CV, 2012 WL 210964, at *1 (Tex. App.—Dallas Jan. 24, 2012, pet. denied) (mem. op.). Southwest asserted that it mistakenly applied the allocated-value formula "on the number of departures of the fleet as a whole instead of completing the formula for each individual aircraft." *Id*. Had the allocated value of its fleet been calculated on an aircraft-by-aircraft basis, Southwest would have paid approximately $25 million less in taxes for the years in question. *Id*.

The court concluded that this mistake did not constitute a clerical error and reasoned that:

> Southwest made no error in determining by mathematical process the value of its aircraft. Southwest did not transpose any of the numbers; it used precisely the figures it intended to use and then correctly computed or calculated those figures within the formula it intended to use. Southwest made no mathematical errors in the process; it correctly added, subtracted, multiplied, and divided the figures. . . . In short, what Southwest wants is to revise the methodology it used to

19

> calculate the renditions. Applying one methodology when another is either called for or would produce better results is simply not a clerical error as that term is contemplated by the statute.

*Id.* at \*3.

Finally, in *Marubeni America Corp. v. Harris County Appraisal District*, Marubeni filed a section 25.25(c)(1) motion to correct the inventory report it submitted to HCAD. 168 S.W.3d 860, 861 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Marubeni's marketing manager explained that the inventory report contained errors in the reported quantity and value of certain materials, which were caused by its representative "using internal reports that were not intended to accurately reflect the year-end volume." *Id.*

> The court concluded that this mistake did not constitute a clerical error:

> We hold that the summary judgment evidence submitted by Marubeni concerning the alleged proper figures for its 2001 mixed xylene inventory established that Marubeni's employees did not commit errors merely in "writing, copying, transcribing, entering or retrieving computer data, computing, or calculating." Rather, its employees simply submitted figures based on allegedly incorrect information.

*Id.* at 863.

In contrast to these authorities, cases holding that a property owner properly asserted a clerical error demonstrate the objective, ministerial nature of these mistakes. As discussed above in *Sears Roebuck & Co.*, the court concluded that the transposition of Sears' account numbers was a result of clerical error. *See* 2000 WL 1195684, at \*3. And in *Comdisco, Inc. v. Tarrant County Appraisal District*, the evidence showed that a clerical error was made where the mistaken addition of an extra zero changed the value of a piece of personal property from $1.3 million to $13 million. 927 S.W.2d 325, 328 (Tex. App.—Fort Worth 1996, writ ref'd).

Applying these authorities to the facts presented here, we conclude Zeon's

20

section 25.25(c)(1) motions properly sought to correct a clerical error. *See* Tex. Tax Code Ann. §§ 1.04(18), 25.25(c)(1).

As we outlined above, Zeon submitted into evidence the original and amended freeport-exemption applications for its four accounts. The only change on the applications was Zeon's response to the question asking for the "Total cost of goods for the entire year ending Dec. 31, 2017." Whereas Zeon's original applications listed "$46,988,751.00" for this question, the amended applications listed "$28,293,332.00." Zeon also sent a letter to HCAD explaining that it "inadvertently put the wrong Cost of Goods Sold on the original forms."

Zeon submitted into evidence an affidavit from Lee Jones, the property tax consultant with Associated Tax Appraisers ("ATA") who completed Zeon's freeport-exemption applications. In relevant part, Jones' affidavit states:

3.      When preparing the original Freeport Application, ATA utilizes documents and inventory spreadsheets provided by its client, Zeon Chemicals, L.P. (hereinafter "Zeon") to complete the section titled "Step 5: Questions About your Property" on page 2 of the Freeport Application. ATA utilized a spreadsheet from Zeon entitled "Sales by Country Code — Shipments From Texas 2017." . . .

4.      In Columns "D" and "F" of that spreadsheet, Column D, line 202 on the last page of the spreadsheet reflects the dollar amount of "Sales $" "Total 2017 shipments from TX plant". Column F reflects the "CGS" or "Cost of Goods Sold". Column F, lines 201 and 202 reflect the "Shipments outside of TX" and "Total 2017 shipments from TX plant", respectively.

5.      The Freeport Application for tax year 2018, Step 5, question No. 4 on page 2, requests the "total cost of goods sold for the entire year ending Dec. 31, 2017". When ATA completed the answer on all four original Freeport applications for the subject accounts on or about in April 2018, it accidentally

21

and inadvertently and incorrectly looked at the information in Column D of Zeon's spreadsheet and wrote, copied, transcribed, entered and/or retrieved Zeon's computer spreadsheet data from the wrong column and listed the figure of $46,988,751.00, instead of what should have been written there from Column F, line 202.

6. The application specifically requested "costs of goods sold", but ATA's clerical error led it to accidentally list the figure for "total sales" instead of "total cost of goods sold for 2017 shipment from TX plant.

7. The figure that should have been entered in answer to question 4, was that figure that was contained on Exhibit 5, Column F, line 202 — $28,293,332, which actually represented the requested "total cost of goods sold".

Zeon also submitted into evidence a copy of the spreadsheet referenced in Jones' affidavit.

Considered together, this evidence shows that Zeon's section 25.25(c)(1) motions were properly seeking to correct a "clerical error" in Zeon's freeport-exemption applications, *i.e.*, a "mistake or failure in writing [or] copying". *See id.* § 1.04(18). The freeport-exemption application specifically requests the figure for "cost of goods sold." But instead of entering the corresponding figure from the spreadsheet, Jones entered the value from the "total sales" column.

"Cost of goods sold" and "total sales" are two distinct concepts. *See, e.g.*, *Tyler Title Co. v. Cowley*, No. 12-18-00043-CV, 2019 WL 1760105, at *6 (Tex. App.—Tyler Apr. 10, 2019, no pet.) (mem. op.) ("[g]ross profits are the total sales revenue less the cost of the goods sold"); *see also Gragg v. Cayuga Indep. Sch. Dist.*, 539 S.W.2d 861, 871 (Tex. 1976) (Reavley, J., concurring) ("the gross income of a [] business is ordinarily considered to be the amount of total sales less the cost of goods sold"). "Cost of goods sold" means the direct costs of producing

the inventory sold by a company. *See* Tex. Tax Code Ann. § 171.1012(c). In contrast, "total sales" refers to the total revenue generated from the sale of inventory. *See Sales*, Black's Law Dictionary (11th ed. 2019); *see also* Michael K. Kuhn, *Achieving a Sensible Definition of "Gross Sales"*, 33 Corp. Couns. Rev. 27, 28-29 (2014) (stating that "gross sales" typically includes "[t]he sales prices of all goods, wares, merchandise and services sold"). These two figures were represented by different columns on Zeon's spreadsheet. But because of a "mistake . . . [in] copying," the wrong figure was included on Zeon's freeport-exemption applications. This is the type of ministerial, obejctive error that section 25.25(c)(1) motions are intended to correct. *See, e.g.*, *Sears Roebuck & Co.*, 2000 WL 1195684, at *3; *Comdisco, Inc.*, 927 S.W.2d at 328.

These facts are also markedly different from those where courts concluded the property owner failed to assert a clerical error. Unlike the property owners in *McDonald* and *Stacy*, Zeon is not attempting to introduce a new factor or variable into the calculation of its freeport exemptions. *See McDonald*, 2021 WL 3556215, at *4; *Stacy*, 2013 WL 6564299, at *4. In contrast to *Southwest Airlines Co.*, Zeon is not seeking to revise an otherwise-correct methodology. 2012 WL 210964, at *3. And unlike *Marubeni American Corp.*, Zeon did not mistakenly rely on reports that were not intended to be final. 168 S.W.3d at 863. Rather, Zeon relied on the correct spreadsheet but mistakenly transposed a number, thus using a value different than the one requested by the freeport-exemption application. This type of mistake falls squarely within the Tax Code's definition of a "clerical error." *See* Tex. Tax Code Ann. §§ 1.04(18), 25.25(c)(1).

HCAD challenges Jones' affidavit on appeal, asserting that he lacks personal knowledge. Because HCAD did not raise this objection in the trial court and secure a ruling thereon, this argument is not preserved for appellate review. *See*

23

Tex. R. App. P. 33.1(a); *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc) ("a litigant must object and obtain a ruling from the trial court to preserve a complaint that an affidavit fails to reveal the basis for the affiant's personal knowledge of the facts stated therein").

HCAD also contends that Jones' affidavit "merely repeats the language of the statute" and therefore is conclusory. A party may raise an objection that an affidavit is conclusory for the first time on appeal. *See Ortega v. Cach, LLC*, 396 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

A conclusory statement expresses a factual inference without providing the underlying facts to support that conclusion. *See Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008); *La China v. Woodlands Operating Co.*, 417 S.W.3d 516, 520 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted." *La China*, 417 S.W.3d at 520.

Here, Jones' affidavit is not conclusory. Jones provides a factual basis sufficient to support his assertion that Zeon's original freeport-exemption applications contained a clerical error. Specifically, Jones stated:

> When ATA completed the answer on all four original Freeport applications for the subject accounts on or about in April 2018, it accidentally and inadvertently and incorrectly looked at the information in Column D of Zeon's spreadsheet and wrote, copied, transcribed, entered and/or retrieved Zeon's computer spreadsheet data from the wrong column and listed the figure of $46,988,751.00, instead of what should have been written there from Column F, line 202.

We reject HCAD's contention that Jones' affidavit is conclusory.

24

In sum, we conclude HCAD failed to meet its burden to prove as a matter of law that Zeon's section 25.25(c)(1) motions did not seek to correct clerical errors. Accordingly, this ground does not provide a basis sufficient to support the trial court's order granting HCAD's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 228.

## CONCLUSION

Because HCAD's arguments raised in the trial court and on appeal do not conclusively prove that the trial court lacked jurisdiction over Zeon's petition for review, the trial court erred by granting HCAD's plea to the jurisdiction. We reverse the trial court's final judgment dismissing the case for want of jurisdiction and remand the case to the trial court for further proceedings.

/s/    Meagan Hassan
         Justice

Panel consists of Justices Wise, Spain, and Hassan.

25